[Cite as *Hahn v. Hahn*, 2012-Ohio-2001.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| ROBERT L. HAHN | C.A. No. 11CA0064-M |
|     Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOANNE HAHN | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
|     Appellee | CASE No. 08DR0431 |

DECISION AND JOURNAL ENTRY

Dated: May 7, 2012

WHITMORE, Presiding Judge.

{¶1} Plaintiff-Appellant, Robert Hahn ("Husband"), appeals from the judgment of the Medina County Court of Common Pleas, Domestic Relations Division. This Court affirms in part and reverses in part.

I

{¶2} Husband and Defendant-Appellee, Joanne Hahn ("Wife"), married in July 1994 and had two children during the marriage. Wife maintained a position as a public school teacher throughout the marriage, but the parties also formed their own construction company, Olympic Construction Co. ("Olympic Construction"), to capitalize upon Husband's skills in construction. The couple borrowed money from Husband's parents to finance the purchase of both their marital residence and the formation of Olympic Construction. The company operated until 2001, at which point the parties dissolved it.

{¶3} In the spring of 2006, Husband accepted a managerial position with the Union Hall Local 109 and left the marital residence because he and Wife "were no longer compatible with one another." Husband returned to the marital residence most evenings and weekends to spend time with the children and to perform household duties, but never slept there. Instead, his parents allowed him to live at their rental property on Reimer Road. Husband continued to reside at the Reimer Road residence throughout these proceedings.

{¶4} Husband lost his job with the Union Hall in May 2007 as a result of a DUI conviction and remained unemployed for the duration of 2007. On October 19, 2007, Husband and Wife entered into a separation agreement. According to Wife, the parties signed the separation agreement as a precursor to divorce because they both recognized the marriage was over. According to Husband, the parties signed the agreement to shift the vast majority of their assets to Wife after the government launched investigations against Husband for misappropriating funds from the Union Hall while employed there as a manager. The investigations, however, never resulted in any civil or criminal liability.

{¶5} Husband began working as a human resources manager for Babcock & Wilcox in February 2008. He only remained with the company for a few months because he forcefully entered the marital residence and attacked Wife in July 2008. As a result of the incident, Husband was convicted of burglary and domestic violence and spent six months in jail. Babcock & Wilcox formally terminated Husband's employment in January 2009. From the time of his termination until the issuance of the final judgment entry in this matter, Husband never obtained other employment.

{¶6} During the pendency of his criminal case, Husband filed a complaint for divorce. Husband later voluntarily dismissed his complaint, but the matter nonetheless progressed

because Wife filed a counterclaim for divorce before the dismissal. In July 2009, Wife filed a motion to adopt and enforce the separation agreement the parties signed in October 2007. The court held a hearing in December 2009 to examine the validity of the separation agreement. The court ultimately found the agreement valid and enforceable, but also scheduled the matter for another evidentiary hearing because the agreement did not resolve all of the issues between the parties. The hearing took place in January 2011. On June 29, 2011, the trial court issued its judgment entry of divorce, followed by a nunc pro tunc entry correcting the child support and cash medical support provisions.

{¶7} Husband now appeals from the trial court's judgment and raises seven assignments of error for our review.

II

Assignment of Error Number One

THE TRIAL COURT ABUSED ITS DISCRETION UNDER R.C. §3105 WHEN IT FOUND THE PARTIES' SEPARATION AGREEMENT TO BE VALID AND ENFORCEABLE AND THE PROPERTY DIVISION TO BE NEARLY EQUAL.

{¶8} In his first assignment of error, Husband argues that the trial court erred by upholding the separation agreement the parties signed on October 19, 2007. We disagree.

{¶9} "Separation agreements are contracts, subject to the same rules of construction as other contracts." *Musci v. Musci*, 9th Dist. No. 23088, 2006-Ohio-5882, ¶ 42. They are to be interpreted so as to honor the intent of both parties, "as evidenced by contractual language." *Miller v. Miller*, 9th Dist. No. 10CA0034-M, 2011-Ohio-4299, ¶ 22. The separation agreement is enforceable "only if the parties intend to contract on its essential terms." *Shetler v. Shetler*, 9th Dist. No. 00CA0070, 2001 WL 542318, *1 (May 23, 2001). The interpretation of any terms of a separation agreement is a question of law, as is the determination of whether a contract is

ambiguous. *Ivanov v. Ivanov*, 9th Dist. No. 24998, 2010-Ohio-1963, ¶ 18-20; *Zlocki v. Zlocki*, 9th Dist. No. 24747, 2009-Ohio-5797, ¶ 8. This Court reviews both propositions de novo. *Miller* at ¶ 22; *Zlocki* at ¶ 8.

{¶10} If ambiguity in a separation agreement does exist, a trial court has the discretion to interpret the agreement and clarify the ambiguity. *Ivanov* at ¶ 18. Additionally, "in a divorce action a trial court may reject some of the terms of a separation agreement, make an independent ruling on those issues and incorporate the independent ruling and partial separation agreement into the divorce decree." *Kaser v. Kaser*, 9th Dist. No. 2110, 1992 WL 281337, *3 (Oct. 7, 1992). *Accord* R.C. 3105.10(B)(2) ("A separation agreement that was voluntarily entered into by the parties may be enforceable by the court * * * upon the motion of either party to the agreement, if the court determines that it would be in the interests of justice and equity to require enforcement of the separation agreement."). The court's authority to do so is discretionary because a trial court "enjoys broad discretion in fashioning an equitable division of marital property." *Helms v. Helms*, 9th Dist. No. 15791, 1992 WL 380602, *1 (Dec. 16, 1992), citing *Bourque v. Bourque*, 34 Ohio App.3d 284, 287 (12th Dist.1986). This Court employs an abuse of discretion standard of review when reviewing a trial court's discretionary rulings on a separation agreement. *Buttolph v. Buttolph*, 9th Dist. No. 09CA0003, 2009-Ohio-6909, ¶ 9. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶11} The plain language of the separation agreement here provides that, should either party institute a divorce action, the agreement "shall be disclosed * * * and all its terms or provisions shall therein be adopted by [the] Court and embodied in and made a part of the order of [the] Court." Husband first argues that the trial court erred by enforcing the parties'

separation agreement because there was no meeting of the minds. Parties must agree to the "essential terms of the contract, such that 'a reasonable person would find that the parties manifested a present intention to be bound to an agreement.'" *Benefits Evolution, L.L.C. v. Atlantic Tool & Die Co.*, 9th Dist. No. 25405, 2011-Ohio-4062, ¶ 25, quoting *Zelina v. Hillyer*, 165 Ohio App.3d 255, 2005-Ohio-5803, ¶ 12 (9th Dist.). A "meeting of the minds" usually manifests through one party's offer and another's acceptance of that offer. *Benefits Evolution, L.L.C.* at ¶ 25. Husband alleges that Wife signed the agreement in anticipation of divorce, but that he only signed the agreement to protect his assets from federal and state investigations. He insists that the trial court erred by enforcing the separation agreement because he never actually intended to be bound by its terms.

**{¶12}** Husband testified that the marriage between the parties fell apart more than a year before they signed their separation agreement and that, at the time he began to spend nights away from the marital residence, "the foundation of the [parties]' relationship was over." Husband and Wife signed the separation agreement in the office of an attorney Wife retained. Husband admitted that he only signed the agreement after revising one of its provisions. Specifically, Husband insisted on including a provision in the agreement that would allow him to retain all of his tools. He also admitted that, in accordance with the agreement's terms, he transferred title to the marital residence to Wife about two weeks after signing the agreement and continued to pay both the mortgage and Wife's car payment until he could no longer afford it.

**{¶13}** Husband maintained at trial that the separation agreement was a fraudulent document the parties created to hide their assets from various authorities. Assuming Husband's argument to be true, the fact that he signed the separation agreement with an ulterior motive in mind, namely to evade certain authorities, does not detract from the fact that he objectively

manifested an intent to be bound by its terms. *Zelina* at ¶ 12. Husband requested at least one change to the separation agreement, signed the agreement in the presence of Wife's attorney, and abided by several provisions of the agreement. A reasonable person would conclude that the parties intended to be bound by the agreement. *Benefits Evolution, L.L.C.* at ¶ 25. Consequently, Husband's first argument lacks merit.

{¶14} Next, Husband argues that the trial court erred by enforcing the separation agreement because it was vague and omitted statutorily required terms. The statute upon which he relies, R.C. 3105.63, applies to separation agreements submitted in support of a petition for dissolution. R.C. 3105.63(A)(1). The parties did not petition for dissolution. Instead, they filed for divorce, and Wife later sought to enforce the separation agreement in their divorce proceeding. *See* R.C. 3105.10(B)(2). In a dissolution, "[t]he court cannot change the agreement of the parties, absent specific authority to do so." *In re Adams*, 45 Ohio St.3d 219, 221 (1989). A separation agreement that divides all of the parties' property is critical in dissolution because it is "a creature of statute" that depends upon the mutual consent of the parties. *In re Whitman*, 81 Ohio St.3d 239, 241 (1998). "Unlike in a dissolution, * * * a trial court in a divorce action has discretionary authority to modify the parties' agreement." *Helms*, 1992 WL 380602, at *1. Because the parties sought a divorce instead of a dissolution, the trial court had the authority to enforce their entire agreement, to enforce portions of their agreement, or to reject their entire agreement. *Helms* at *1. The court conducted multiple hearings and received testimony from both Husband and Wife. As such, the trial court had the ability to consider the separation agreement in conjunction with the parties' testimony and the evidence they introduced. Husband's argument that the court could not enforce the agreement because it did not determine all of the issues between the parties is meritless.

{¶15} Finally, Husband argues that the trial court erred by enforcing the agreement because it was inequitable and he signed it under duress. "A court may refuse to enforce a separation agreement if the agreement is not fair and equitable at the time of signing." *Jarvis v. Jarvis*, 9th Dist. No. 16618, 1994 WL 500887, *2 (Sept. 14, 1994). *See also* R.C. 3105.10(B)(2). Additionally, "[a] separation agreement that is the product of duress will be held to be unenforceable." *Quebodeaux v. Quebodeaux*, 102 Ohio App.3d 502, 505 (9th Dist.1995). Husband avers that the separation agreement was inequitable because the parties drafted it such that Wife received virtually all the benefits of the agreement while Husband incurred all the liabilities. According to Husband, he only agreed to sign the document because Wife threatened to divorce him and "tak[e] everything" if he did not protect their assets.

{¶16} At the time the parties signed their separation agreement, Wife was working full time and caring for the parties' two children at the marital residence. She provided insurance for the children and paid for their childcare expenses. Husband was unemployed and living at a house that his parents owned. He had lost his job due to a DUI and was under investigation for misappropriating union funds. The parties did not owe any joint debts other than the mortgage and the lease on Wife's car, and the agreement did not address spousal support or child support. The agreement did provide Wife with the marital residence, most of the items in the residence, and her car. Because the children resided with Wife, however, that arrangement minimized the disruption to their lives that might have occurred had the assets been divided more equally.

{¶17} Husband testified that he signed the separation agreement to appear almost "penniless" in the event he became liable for misappropriating funds and because Wife threatened to divorce him if he did not secure their assets. To the extent Husband argues that he only signed the agreement under duress, the record reflects that the difficult position in which

Husband found himself stemmed from his lack of employment (due to his DUI) and his concern about civil or criminal liability stemming from allegations against him. "To avoid a contract on the basis of duress, a party must prove coercion *by the other party to the contract*. It is not enough to show that one assented merely because of difficult circumstances *that are not the fault of the other party*." (Emphasis sic.) *Meyer v. Meyer*, 9th Dist. No. 21023, 2002-Ohio-5038, ¶ 12, quoting *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 246 (1990). Even if Wife encouraged Husband to enter into an agreement that favored her due to his difficult circumstances, she had no role in creating those circumstances.

{¶18} The trial court conducted an extensive review of the parties' separation agreement, separately considered each provision, and ultimately concluded that the agreement was valid and enforceable. We conclude that the trial court did not abuse its discretion by upholding the separation agreement. *Kaser*, 1992 WL 281337, at *3; *Helms*, 1992 WL 380602, at *1. Husband's first assignment of error is overruled.

## Assignment of Error Number Two

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT PROPERTY OWNED BY A THIRD PARTY WAS MARITAL PROPERTY UNDER R.C. §3105.171 AND AWARDED THE PROPERTY TO HUSBAND IN THE DIVISION OF MARITAL ASSETS.

{¶19} In his second assignment of error, Husband argues that the trial court erred by designating certain property as marital and awarding that property to Husband in the division of the marital assets. We agree.

{¶20} In a divorce proceeding, a trial court must classify property as either marital or separate. R.C. 3105.171(B). The classification of property as marital or separate is a question of fact that this Court reviews under a civil manifest weight standard. *Louis v. Louis*, 9th Dist. No. 10CA0047, 2011-Ohio-4463, ¶ 4. "As such, we will affirm the trial court's characterizations if

they are supported by competent, credible evidence." *Wohleber v. Wohleber*, 9th Dist. Nos. 08CA009402 & 08CA009403, 2009-Ohio-995, ¶ 7. Marital property includes any personal property or interest in any personal property acquired during the course of the marriage and currently owned by one or both spouses. R.C. 3105.171(A)(3)(a)(i)-(ii).

{¶21} Husband avers that the trial court erred in its classification of five specific pieces of property: a 1986 Ford F350, a 1986 Chevy dump truck, a 1989 trailer, a 2002 Polaris ATV, and a Case backhoe. Husband's parents supplied Husband and Wife with the foregoing equipment for use in their company, Olympic Construction. Husband and his parents all testified that, after Olympic Construction ceased to operate, Husband returned the equipment to his parents in partial repayment of the debt he and Wife owed them for their contribution to the business. Husband produced titles for the Ford F350, Chevy, trailer, and ATV, all of which bore his father's name. The titles for the Ford F350, Chevy, and trailer bear an issue date of April 23, 2004. The title for the ATV bears an issue date of May 29, 2007. Husband did not produce a title for the Case backhoe. His father, Robert Hahn, testified that there was no title for the backhoe because it was farm equipment. Hahn explained that he purchased the backhoe, it was his personal asset, and he stored it on his property. He testified that the backhoe would not be available for Husband's use if he wanted to remove it from the property.

{¶22} The trial court acknowledged that Husband produced evidence that he transferred title to the equipment to his parents during the course of the marriage. Even so, the court classified the equipment as Husband's marital property under R.C. 3105.171(A)(3)(a) because it remained in his physical possession. To qualify as marital property under that provision, however, a spouse must currently own or have a legally cognizable interest in the property. R.C. 3105.171(A)(3)(a)(i)-(ii). The term "own" is defined as follows: "To rightfully have or possess

as property; to have legal title to." *Black's Law Dictionary* 1137 (8th Ed.2004). Similarly, an "interest" amounts to a "legal share in something" and "all or part of a legal or equitable claim to or right in property * * *." *Id.* at 828. An "owner" is someone "who has the right to possess, use, and convey something * * *." *Id.* at 1137. The record does not support the conclusion that Husband currently owned the equipment or had an interest in it.

{¶23} Husband resided at the property where the equipment was stored, but the property did not belong to him. The Reimer Road property belonged to his parents who merely permitted Husband to live there. Husband's father testified that he owned the equipment and it was not available for Husband's use. Further, all of the titles Husband introduced support the conclusion that the equipment belonged to his father. The titles were transferred during the course of the marriage, well before the parties signed their separation agreement. Wife's only testimony was that she did not know Husband had transferred any of the equipment. She was unable to produce any documentation to refute Husband's proof of the title transfers and maintained only that she believed Husband still possessed the equipment because it was kept on the Reimer Road property.

{¶24} There is not competent, credible evidence in the record to support the trial court's classification of the 1986 Ford F350, 1986 Chevy dump truck, 1989 trailer, 2002 Polaris ATV, and Case backhoe as marital property. Husband transferred the equipment to his parents during the course of the marriage and relinquished any ownership rights or interests the parties had in the equipment. Husband could not convey the equipment, remove the equipment from the property, or otherwise use it as he wished. Therefore, he did not currently own or have an interest in the equipment so as to justify its classification as marital property. R.C.

3105.171(A)(3)(a)(i)-(ii). The trial court erred by classifying the equipment as martial property and awarding that property to Husband in the division of the marital assets.

{¶25} Wife asserts that, even if this Court determines that the equipment was not marital property, this Court still could uphold the trial court's decision by construing it as a distributive award to Wife. R.C. 3105.171(E)(4) permits a trial court to make a distributive award to one spouse if the other engaged in financial misconduct. Wife argues that Husband engaged in misconduct when he fraudulently disposed of the equipment absent her knowledge. Although R.C. 3105.171 permits distributive awards in certain circumstances, Wife never sought a distributive award in the court below. Distributive awards sound in equity and require a trial court to make written findings of fact after considering enumerated statutory factors. R.C. 3105.171(F)-(G); *Schiesswohl v. Schiesswohl*, 9th Dist. No. 21629, 2004-Ohio-1615, ¶ 52. The trial court never found that Husband engaged in financial misconduct in the transfer of the equipment or indicated that it was exercising any discretion to make a distributive award. This Court will not uphold the trial court's erroneous award to Husband under the guise of a permissive, equitable remedy that Wife never sought in the court below.

{¶26} The trial court specifically found that the equipment was marital property under R.C. 3105.171(A)(3)(a). The court's factual finding is against the manifest weight of the evidence, as the record does not contain competent, credible evidence in support of that conclusion. Accordingly, Husband's assertion that the trial court erred by crediting him with $28,800 (the value of the equipment) in the overall property division is correct. Upon remand, the trial court must recalculate the division of the marital assets. Husband's second assignment of error is sustained.

Assignment of Error Number Three

THE TRIAL COURT ABUSED ITS DISCRETION IN CATEGORIZING AID FROM A PARTY'S PARENT AS A GIFT IN PERPETUITY THAT CONSTITUTED INCOME UNDER R.C. §3119.01 IN THE ABSENCE OF SUPPORTING EVIDENCE.

Assignment of Error Number Four

THE TRIAL COURT ABUSED ITS DISCRETION UNDER R.C. §3119.01 IN FINDING HUSBAND VOLUNTARILY UNDER/UNEMPLOYED AND IMPUTING INCOME TO HIM IN THE ABSENCE OF CREDIBLE EVIDENCE OF HIS ABILITY TO EARN THE IMPUTED INCOME.

{¶27} In his third and fourth assignments of error, Husband argues that the trial court erred by calculating his gross income. We disagree.

{¶28} "In determining the appropriate level of child support, a trial court must calculate the gross income of the parents." *Bajzer v. Bajzer*, 9th Dist. No. 25635, 2012-Ohio-252, ¶ 11. "Gross income" is "the total of all earned and unearned income from all sources during a calendar year." R.C. 3119.01(C)(7). A parent's total gross income figure will include any "potential income" that a trial court imputes upon a finding that the parent is voluntarily unemployed or underemployed. *Collins v. Collins*, 9th Dist. No. 10CA0004, 2011-Ohio-2087, ¶ 26, quoting R.C. 3119.01(C)(5). This Court applies a civil manifest weight standard of review when considering a trial court's factual finding that a parent is voluntarily unemployed. *Kent v. Kent*, 9th Dist. No. 25231, 2010-Ohio-6457, ¶ 10-12. Yet, the amount of potential income the court imputes once it finds voluntary unemployment is a discretionary determination subject only to an abuse of discretion standard of review. *Bajzer* at ¶11. Likewise, this Court reviews a trial court's ultimate gross income determination for an abuse of discretion. *Streza v. Streza*, 9th Dist. No. 05CA008644, 2006-Ohio-1315, ¶ 5-7.

{¶29} Husband testified that he did not have any income and that his parents paid for all of his expenses. After annualizing Husband's monthly expenses, the trial court determined that Husband received $32,424 annually from his parents. The court then included that amount in its calculation of Husband's gross income. Husband argues that the trial court erred by imputing $32,424 in income to him because there was no evidence that his parents would continue to support him indefinitely.

{¶30} The trial court did not impute $32,424 to Husband. Imputed income is potential income that "the parent would have earned if fully employed." R.C. 3119.01(C)(11)(a). Husband actually received the money at issue from his parents, so it was not imputed income. *See Bentley v. Rojas*, 9th Dist. No. 10CA009776, 2010-Ohio-6243, ¶ 10-11. He testified that his parents had been the sole source of his funds since his release from jail and routinely paid all of his bills. Among other items, those bills included his rent, utilities, car loan payment, cell phone payment, cable television payment, and food allowance. Husband's mother testified that she and her husband would continue to care for Husband as long as they were able and also that, in exchange for their help, Husband cared for the Reimer Road property, shoveled the snow, raked the leaves, and performed any other physical tasks his parents needed help with.

{¶31} Gross income includes "all other sources of income," except those specifically excluded by statute. R.C. 3119.01(C)(7). Despite the fact that an exception exists for nonrecurring income, Husband does not argue that the money he receives from his parents is specifically excluded by statute. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. No. 18349, 1998 WL 224934, *8 (May 6, 1998). Because gross income includes all earned and unearned income from certain enumerated sources as well as "all other sources," R.C.

3119.01(C)(7), the trial court acted within its discretion in considering the money Husband received from his parents part of Husband's gross income.

{¶32} Next, Husband argues that the trial court erred by determining that he was voluntarily unemployed and by imputing $31,576 to him in potential income. For purposes of the child support statute, the term "voluntary" means "done by design or intention, intentional, proposed, intended, or not accidental. Intentionally and without coercion." *Collins*, 2011-Ohio-2087, at ¶ 27, quoting *Rock v. Cabral*, 67 Ohio St.3d 108, 111 (1993), fn. 2. The trial court determined that Husband was voluntarily unemployed as a result of his incarceration and criminal conviction. In so holding, the trial court cited several opinions from other districts. *See, e.g., Payton v. Payton*, 12th Dist. No. CA2001-01-002, 2001 WL 1463057, *3 (Nov. 19, 2001); *Williams v. Williams*, 10th Dist. No. 92AP-438, 1992 WL 246020, *1 (Sept. 24, 1992).

{¶33} Although Husband captions his assignment of error as a challenge to both the trial court's determination of voluntary unemployment and its calculation of imputed income, Husband limits his argument to a discussion of the imputation factors. Income is only imputed after the court finds a parent voluntarily unemployed or underemployed. *Misleh v. Badwan*, 9th Dist. No. 24185, 2009-Ohio-842, ¶ 7 ("[T]he trial court must make an explicit finding of voluntary unemployment or underemployment before it imputes income to a parent for child support purposes."). Husband fails to explain why the trial court erred by finding him voluntarily unemployed. Husband testified that he lost his job as a result of the two convictions he received after attacking Wife at the marital residence and that he had yet to regain any employment after serving his term of incarceration. *See Payton* at *3 (affirming finding of voluntary unemployment after father was incarcerated and noting that "a parent cannot avoid the duty of support owed to a minor child through intentional conduct"). In the absence of any

reasoned argument to the contrary, this Court will not conclude that the trial court's finding of voluntary unemployment is against the manifest weight of the evidence. *See* App.R. 16(A)(7); *Cardone*, 1998 WL 224934, at \*8. Consequently, we limit our review to Husband's argument that the court erred in its imputation decision.

{¶34} A trial court arrives at its calculation of imputed income that a parent would have earned if fully employed based on its consideration of the following criteria:

(i) The parent's prior employment experience;

(ii) The parent's education;

(iii) The parent's physical and mental disabilities, if any;

(iv) The availability of employment in the geographic area in which the parent resides;

(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi) The parent's special skills and training;

(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being calculated under this section;

(ix) The parent's increased earning capacity because of experience;

(x) Any other relevant factor.

R.C. 3119.01(C)(11)(a)(i)-(x). "[T]he central inquiry under the statutory scheme is the best interests of the children." *Collins* at ¶ 43.

{¶35} The trial court engaged in a review of each of the foregoing factors. Husband had a college degree and was earning approximately $72,000 per year at the time he lost his job due to his convictions. Husband did not testify to any physical or mental disabilities and had experience in construction at the commercial, residential, and industrial levels. According to

Husband, he had completed hundreds of job searches, but was unemployable due to his felony convictions. Husband claimed that he had not applied for jobs in the labor industry for construction because no such job listings existed. He testified that it would be extremely difficult for a convicted felon to obtain employment in the construction field because "a convicted felon cannot get bonded." Yet, he also admitted that bonds typically only apply to public work and his experience exceeded the public work field. Further, Husband admitted that he did not know if it would be possible for someone with his skill set to obtain work as a laborer, despite his convictions.

{¶36} The trial court determined that Husband last earned $64,000 in a human resources position and that, with the $32,424 his parents contributed, Husband only had to earn an additional $31,576 per year to obtain an income level of $64,000. Consequently, the trial court imputed $31,576 to Husband. Husband argues that the trial court abused its discretion in imputing income to him because the record is devoid of any evidence that Husband had any available employment opportunities.

{¶37} Initially, we clarify some confusing language the trial court employed in its entry. After setting out its calculations, the trial court determined that Husband only needed to earn $31,576 to achieve a gross income level of $64,000 per year. The court then referred to the $64,000 amount as the amount it was imputing to Husband. The remainder of the court's entry, however, makes clear that the court was not actually imputing $64,000 to Husband. The court only imputed $31,576; the amount necessary to supplement the income Husband actually received from his parents in order to achieve a gross income level of $64,000. To the extent the trial court mistakenly referred to the entire $64,000 as imputed income in its judgment entry, we

note that only $31,576 actually amounted to imputed income. *See Bentley*, 2010-Ohio-6243, at ¶ 6-11.

{¶38} Based on our review of the record, we cannot conclude that the trial court abused its discretion by imputing $31,576 to Husband in its calculation of his potential income. Husband asked the trial court to find his earning level to be forty hours per week based on minimum wage. He did so even though he had not worked since the time of his incarceration. By Husband's own testimony, therefore, some imputation of income was reasonable here. Moreover, in spite of Husband's testimony that he was earning approximately $72,000 at the time of his incarceration, the trial court only relied upon a $64,000 figure. Husband admitted that he had experience in numerous construction fields and that he did not know whether it might be possible for him to obtain employment as a laborer. Husband only insisted, absent any supporting evidence, that no positions in the labor industry existed. The trial court exercised its discretion and decided, after considering all the factors set forth in R.C. 3119.01(C)(11), to impute $31,576 to Husband. Husband has failed to show that the court's decision was unreasonable under the circumstances. *See Bajzer* at ¶11. Consequently, we conclude that the trial court did not abuse its discretion in imputing $31,576 to Husband.

{¶39} To summarize, the trial court here did not err by determining that the money Husband received from his parents was income and that Husband was voluntarily unemployed. Additionally, the court did not abuse its discretion in calculating Husband's potential and gross income levels. Husband's third and fourth assignments of error are overruled.

Assignment of Error Number Five

THE TRIAL COURT ABUSED ITS DISCRETION UNDER R.C. §3119.022 WHEN IT CALCULATED CHILD SUPPORT OBLIGATIONS FOR 2009 AND FOLLOWING BASED UPON ESTIMATED 2011 INCOME FOR ONE PARENT AND IMPUTED INCOME FOR THE OTHER.

{¶40} In his fifth assignment of error, Husband argues that the trial court abused its discretion in selecting Husband's and Wife's annual gross incomes for purposes of completing a child support worksheet. We disagree.

{¶41} As to his income, Husband argues that the court erred when it listed his income as $64,000 on the child support worksheet because that figure depended upon imputed income. It is proper for the trial court to include potential income as annual gross income for purposes of a child support worksheet when the court has imputed income to a parent. *Rock*, 67 Ohio St.3d at 112-113. We have already determined that the trial court did not err by imputing income to Husband. Consequently, Husband's argument that the court abused its discretion in listing an annual gross income of $64,000 for Husband on the child support worksheet lacks merit.

{¶42} Husband also argues that the court erred when it listed Wife's annual gross income as $64,086 because that figure represented her estimated income for 2011. Wife testified that her base salary at the time of the hearing was $58,745, but the trial court relied upon her projected income to reach an annual gross income level of $64,086. Husband argues that it was error for the trial court to rely upon a projected income for Wife instead of her reported 2009 income of $53,595. Disregarding the fact that a decrease of more than $10,000 in Wife's annual income would result in an increase of Husband's support obligation, Husband fails to support his argument with any legal authority. An appellant bears the burden of demonstrating error on appeal through citations to the record and applicable legal authority. App.R. 16(A)(7). Husband has not met his burden in claiming that the court erred in calculating Wife's annual gross income. Husband's fifth assignment of error is overruled.

Assignment of Error Number Six

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED UNDER R.C. §3119.79 WHEN IT ENTERED AN ORDER OF CHILD SUPPORT WITHOUT SPECIFIC REFERENCE TO OR INCORPORATION OF THE CHILD SUPPORT GUIDELINES WORKSHEET.

{¶43} In his sixth assignment of error, Husband argues that the trial court committed reversible error when it modified his temporary child support obligation without referencing a child support worksheet. Husband's argument strains credulity. The trial court completed a child support worksheet, labeled it Exhibit D, and attached it to its judgment entry. The court also specifically referenced the worksheet in its discussions of the cash medical support provision of its judgment entry. The worksheet is part of the record. *Smith v. McLaughlin*, 9th Dist. No. 24890, 2010-Ohio-2739, ¶ 16-18. Further, Husband is clearly aware the trial court used a worksheet, as he challenged the annual gross income figures the court used in the worksheet in his fifth assignment of error. Husband's argument is meritless. His sixth assignment of error is overruled.

Assignment of Error Number Seven

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED UNDER R.C. §3119.22 WHEN IT ENTERED BOTH AN ORDER FOR CASH MEDICAL SUPPORT BASED UPON AN ATTACHED CHILD SUPPORT GUIDELINE WORKSHEET AND STATED REASONS FOR DEVIATIONS FROM THE CASH MEDICAL SUPPORT AMOUNT EXISTED FINDING THE SAME AMOUNT TO BE UNJUST, INAPPROPRIATE, AND NOT IN THE CHILDREN'S BEST INTERESTS.

{¶44} In his seventh assignment of error, Husband argues that the court erred by ordering him to pay cash medical support after finding the support computation unreasonable.

{¶45} First, Husband reiterates his argument that the court could not order cash medical support without referencing the child support guideline worksheet. The record betrays Husband's assertion that the trial court failed to reference the worksheet. The court's judgment

entry reads, in relevant part, as follows: "This cash medical support amount is based on Line 31 of the Sole Custody/Shared Parenting Child Support Guidelines worksheet attached." The worksheet is attached to the judgment entry and marked Exhibit D. Therefore, we reject Husband's first argument.

{¶46} Second, Husband argues that the court's judgment entry contains inconsistent findings. Husband asserts that while the court found the guideline computation of cash medical support to be "unjust, inappropriate and not in the child(ren)'s best interests," the court then went on to order Husband to pay cash medical support in accordance with the guideline. A closer reading of the court's judgment entry reveals, however, that the court did not simply order Husband to pay the cash medical support. The applicable portions of the court's judgment entry read as follows:

> Husband shall pay * * * cash medical support in the amount of $162.83 per month plus two percent (2%) processing charge *when health insurance is not provided.*
>
> * * *
>
> Upon receipt of notice by the Child Support Enforcement Agency that *private health insurance coverage as ordered is not available at a reasonable cost*, cash medical support shall be paid in the amount as determined by the child support guidelines computation worksheet attached.

(Emphasis added.) Husband's obligation to pay cash medical support is not absolute. Rather, it is contingent upon health insurance not being provided. The court's judgment entry provides that Wife is responsible for obtaining health insurance coverage for the children. The court, therefore, only ordered Husband to pay cash medical support for the children if Wife was unable to obtain insurance for the children at a reasonable cost. Husband's seventh assignment of error is overruled.

III

**{¶47}** Husband's second assignment of error is sustained. His remaining assignments of error are overruled. The judgment of the Medina County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETH WHITMORE
FOR THE COURT

MOORE, J.
DICKINSON, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

LINDA HOFFMAN, Attorney at Law, for Appellant.

DAVID L. MCARTOR and KRISTOPHER K. AUPPERLE, Attorneys at Law, for Appellee.