[Cite as *Miller v. Miller*, 2015-Ohio-5447.]

STATE OF OHIO        )          IN THE COURT OF APPEALS
                     )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA     )

LORI A. MILLER                  C.A. No.        14CA0083-M

        Appellee

        v.                      APPEAL FROM JUDGMENT
                                ENTERED IN THE
PAUL E. MILLER, JR.             COURT OF COMMON PLEAS
                                COUNTY OF MEDINA, OHIO
        Appellant               CASE No.        08DR0514

DECISION AND JOURNAL ENTRY

Dated: December 28, 2015

---

SCHAFER, Judge

{¶1}   Appellant, Paul Miller ("Paul"), appeals the judgment of the Medina County Court of Common Pleas, Domestic Relations Division, modifying his spousal support and child support obligations.  For the reasons that follow, we affirm.

I.

{¶2}   Paul and Appellee, Lori Miller ("Lori"), were divorced by decree issued on January 26, 2010.  The couple has four children from their marriage: triplets born in 1994 and another son born in 1995.  As part of their divorce decree, the parties entered into a separation agreement that obligated Paul to pay child support to Lori in the amount of $4,000 per month and spousal support in the amount of $6,000 per month.[1]  In setting these support amounts, the parties expressed their intention "to provide [Lori] with a set monthly combined child support

---

[1] None of the support figures listed in this opinion includes the additional two percent processing fee due to the Medina County Child Support Enforcement Agency.

and spousal support payment of $10,000.00 per month based on a current baseline of a combined gross income of $635,000.00 per year ([Paul] at $600,000.00 and [Lori] at $35,000.00), with the intention of equalizing the parties' net incomes." The separation agreement further provided that in light of this intention, "once the three older children emancipate * * *, the spousal support shall increase by like amount that child support decreases."

{¶3}    The parties attached the relevant statutory child support worksheet for a shared parenting situation.  On the worksheet, Paul's annual gross income is listed on line 1a as $400,000 while Lori's is listed as $35,000.  Lori's income was imputed since at the time of the divorce decree's issuance, she was unemployed.  The $400,000 figure for Paul was reached after deducting $200,000 from his income as a broker with Raymond James.  This deduction was specified as follows in the separation agreement:

> In the event of a modification of child and spousal support due to a change of circumstances, the parties acknowledge that the first Two Hundred Thousand Dollars ($200,000.00) of [Paul]'s annual gross income represents approximately $200,000.00 in imputed income in repayment of the bonus/loan structure he entered into with Raymond James.  The parties agree that so long as the obligation on the original debt remains unpaid and Raymond James continues to impute the specified amount of income to [Paul], then in any future modification proceedings, the first $200,000.00 of [Paul]'s income shall be excluded from exposure in the calculation of support, such that support will be calculated and considered as if [Paul] earns $200,000.00 less than his actual gross income.

The worksheet contains a $72,000 deduction for spousal support payments, but it does not list any other adjustments to Paul's gross income.

{¶4}    The separation agreement states that Paul's obligation to pay spousal support was in force for 70 consecutive months, commencing on March 1, 2013.  The amount of spousal support was originally set to $6,000 per month due to the parties' intent "to equalize net incomes * * * through child and spousal support."  Moreover, the initial amount of spousal support was set "[u]ntil further Order of the Court, or until the parties' three oldest children emancipate,

whichever is earlier[.]" The parties stipulated to the trial court retaining jurisdiction over modifications of spousal support, but they explicitly agreed that the trial court would not retain jurisdiction to modify the duration of Paul's spousal support obligation.

{¶5} Since the divorce decree's issuance, the parties have filed a variety of post-decree motions. For the purposes of this appeal, the following motions are relevant. Paul filed a motion to modify both spousal and child support on July 26, 2010. He supplemented his motion with an additional request for modification filed on January 10, 2012. Lori, meanwhile, filed a motion requesting the initiation of a wage withholding order that attached Paul's wages for the payment of spousal and child support. After the trial court granted Lori's request for a wage withholding order, Paul filed a motion to vacate the order because his wages were being garnished at a rate above the maximum allowed under federal law.

{¶6} A magistrate conducted an evidentiary hearing on the parties' motions. The hearing started on April 30, 2012 with continuances to September 12, 2012 and October 24, 2012. At the hearing, evidence was offered reflecting that Lori's income substantially increased from the $35,000 imputed to her in the original decree. Testimony was also received regarding Paul's employment with Raymond James. When he left Wachovia in 2008, Raymond James gave him a forgivable loan of approximately $1.3 million (the "Raymond James Loan"). Of that amount, approximately $650,000 was paid to Wachovia to repay a debt owed by Paul.

{¶7} Raymond James then agreed to forgive the remaining amount at the rate of approximately $200,000 per year ($50,000 per quarter) so long as Paul met certain performance standards. If Paul failed to meet those standards during a quarter, he was required to repay approximately $50,000 for each low-performing quarter. Although he did not receive any payments after 2008 from the Raymond James Loan, the amount of loan forgiveness was

reported as income on Paul's W-2 forms and he had to pay income taxes on the forgiven amount. Moreover, in 2010, Paul failed to meet the required performance standard and he was required to repay approximately $50,000 on the Raymond James Loan.

{¶8}  Paul offered the expert testimony of James Bogniard, who testified to the financial circumstances of Paul and Lori. Mr. Bogniard indicated his belief that the divorce decree's reference to equalization of net incomes contemplated deducting the parties' gross income by any amount forgiven on the Raymond James Loan, the total amount of federal, state, Medicare, and Social Security taxes paid, and the total amount of spousal and child support payments made. He also added any support payments to Lori's income total to reach her net income.

{¶9}  After applying this understanding of the parties' divorce decree, Mr. Bogniard testified that Paul's 2010 net income was $39,135 and that his 2011 net income was $60,900. Conversely, Mr. Bogniard testified that Lori's 2010 net income was $130,247 and that her 2011 net income was $134,791. He also offered testimony regarding the parties' projected net incomes for 2012. Mr. Bogniard further testified that to equalize the parties' net incomes, as he described them above, the trial court should order spousal support and child support as follows for each year: (1) 2010: spousal support in the monthly amount of $2,025 and child support in the monthly amount of $1,699; (2) 2011: spousal support in the monthly amount of $1,792 and child support in the monthly amount of $1,813; and (3) 2012: spousal support in the monthly amount of $2,000 and child support in the monthly amount of $1,795.

{¶10}  On March 27, 2013, the magistrate issued a decision modifying spousal and child support. In deciding how to modify support, the magistrate first made the following

determination regarding the parties' incomes, which he found were substantially different from the original decree:

> Unfortunately, the parties did not provide in the Separation Agreement or the Decree a definition of what they considered 'equalization of net incomes.' Mr. Bogniard presents [Paul]'s view. However, as brought out on cross-examination, Mr. Bogniard did not use gross income from Medicare wages but from the lower figure in Box 1 of [Paul]'s W-2. As Medicare wages are earned income, the Court finds that Mr. Bogniard did not use the correct starting point for his calculations. Furthermore, a reading of the parties' Separation Agreement and Decree does not provide that the parties intended to define net income of [Paul] by removing additional tax liability from [Paul]'s income for his Raymond James debt for which he assumed sole responsibility. Nothing in the parties' Separation Agreement or Decree provides for this deduction from [Paul]'s net income. Notably, the parties clearly indicated that in any modification [Paul]'s gross income should be reduced by $200,000 in lieu of the knowledge on both parties that the $200,000 of income from loan forgiveness was not truly available for payment of support. The Court finds that if the parties were explicit in removing this $200,000 from [Paul]'s income for calculation, then it would be logical that they would have been just as explicit about leaving [Paul]'s tax liability for his sole debt in a calculation of net income if that was intended.

As a result, the magistrate decided against deducting any of Paul's tax liabilities from his gross income. Rather, for the purposes of income calculation, the magistrate determined that it would be fair and equitable to only deduct the amount of forgiveness on the Raymond James Loan from Paul's gross income, as well as any support payments made. Lori's adjusted income for support purposes was determined by adding her gross wages to any amount of support received.

**{¶11}** Based on these decisions, the magistrate recommended that, effective July 26, 2010, child support be modified to $2,970.83 per month and spousal support be modified to $4,366.67 per month. He also recommended that, effective January 10, 2012, child support be modified to $3,196.76 per month and spousal support be modified to $4,666.67 per month. The Magistrate also found that the parties' triplets emancipated on June 3, 2012. Accordingly, after determining the parties' adjusted incomes the same way as described above and considering the fact that only one minor child was the subject of the support order, the magistrate recommended

that, effective June 3, 2012, child support be modified to $2,223 per month and spousal support be modified to $6,250. The magistrate ordered that all support payments be made by wage withholding order and he recommended the denial of Paul's motions to vacate the wage attachment.

{¶12} On March 27, 2013, the trial court adopted the magistrate's decision. Subsequently, both parties filed timely objections to the magistrate's decision. After oral argument on the objections, the trial court overruled all of the objections by judgment entry dated August 27, 2014. Paul filed this timely appeal, presenting three assignments of error for our review.[2]

II.

**Assignment of Error I**

**The trial court erred as a matter of law in construing the parties' separation agreement as it relates to the meaning of the parties' stated intent to equalize their net incomes.**

{¶13} In his first assignment of error, Paul argues that, for the purposes of his support obligations, the trial court should have deducted his tax liabilities from his gross wages. We disagree.

{¶14} This assignment of error revolves around the proper interpretation of the separation agreement's provision expressing "the intention of equalizing the parties' net incomes."[3] Paul contends that "net income" in the separation agreement refers to the incomes that the parties receive after deductions from gross wages for the forgiveness amount of the

___

[2] Lori has not cross-appealed the trial court's denial of her objections to the magistrate's decision.

[3] The parties do not argue on appeal that the separation agreement in this matter is ambiguous, so we need not concern ourselves with any purported ambiguity in the agreement's terms.

Raymond James Loan and the amount of any tax liabilities. Lori counters that net income refers to the adjusted income that results after the forgiveness amount of the Raymond James Loan is deducted from gross wages. After reviewing the separation agreement, we conclude that the parties' agreement intended to equalize net incomes by deducting only the amount of forgiveness on the Raymond James Loan from gross wages.

{¶15} "Separation agreements are contracts, subject to the same rules of construction as other contracts, to be interpreted so as to carry out the intent of the parties." *Musci v. Musci*, 9th Dist. Summit No. 23088, 2006-Ohio-5882, ¶ 42. "The intent of the parties is presumed to reside in the language they chose to use in their agreement." *Hare v. Isley*, 9th Dist. Summit No. 26078, 2012-Ohio-3668, ¶ 9. If the separation agreement is not ambiguous, "the trial court may not construe, clarify or interpret the parties' agreement to mean anything outside of that which it specifically states." *Wiseman v. Wiseman*, 9th Dist. Medina No. 13CA0009-M, 2014-Ohio-2002, ¶ 8, citing *Dzeba v. Dzeba*, 9th Dist. Summit No. 16225, 1993 WL 498181 (Dec. 1, 1993). Accordingly, "'the trial court must defer to the express terms of the contract and interpret it according to its plain, ordinary, and common meaning.'" *Id.*, quoting *Hyder v. Pizer*, 9th Dist. Summit No. 20791, 2002 WL 570256 (Apr. 17, 2002). Nevertheless, "[t]he interpretation of any terms of a separation agreement is a question of law," which we review de novo. (Internal citations omitted.) *Hahn v. Hahn*, 9th Dist. Medina No. 11CA0064-M, 2012-Ohio-2001, ¶ 9.

{¶16} Although the separation agreement does not include a definition of net income, it does state that $200,000 must be deducted from Paul's gross wages since that amount reflects the approximate amount forgiven on the Raymond James Loan each year. The guideline worksheet attached to the agreement lists Paul's 2009 wages as $400,000, which is $200,000 less than the amount of gross income he received that year. The only other deduction from Paul's income

listed on the worksheet were for the approximately $72,000 in spousal support payments he made in 2009.

{¶17} In light of these provisions in the separation agreement, we conclude that the parties' use of "net income" referred to the income calculated after deducting the amount of forgiveness on the Raymond James Loan and his spousal support payments from Paul's gross income on his W-2. The agreement never states that any of Paul's tax liabilities are to be deducted for the purposes of calculating his support obligations and no such deduction, even for local tax, is included on the guideline worksheet. Had the parties intended to remove any tax liabilities from the calculation of income for support purposes, their agreement would have included an explicit provision like the one regarding the Raymond James Loan deduction or some other deduction would have been included in the guideline worksheet. *See Uram v. Uram*, 65 Ohio App.3d 96, 99 (9th Dist.1989) ("Applying the principle of *expressio unius est exclusio alterius* [to the separation agreement], which means that the expression in a contract of one or more things of a class implies the exclusion of all not expressed, the trial court did not abuse its discretion in limiting [the husband]'s obligation to those terms specified in the agreement."). As a result, the trial court did not err in its interpretation of the separation agreement and in deciding not to deduct Paul's tax liabilities when calculating his income for support purposes.

{¶18} Accordingly, we overrule Paul's first assignment of error.

### Assignment of Error II

**The trial court erred as a matter of law in refusing to vacate a wage attachment order which exceeds the maximum amount allowable under federal law.**

{¶19} In his second assignment of error, Paul asserts that the trial court erred in declining to vacate the wage withholding order attaching his wages for the payment of spousal

and child support.  Specifically, he argues that the trial court issued a wage withholding order that violated 15 U.S.C. 1673(b)(2)'s command that only 55 percent of a person's "disposable earnings" can be attached via a wage withholding order to satisfy a support order.  We disagree.

**{¶20}**  15 U.S.C. 1673(b)(2) pertinently provides as follows:

The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed –

(A)      where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposal earnings for that week; * * *

except that, with respect to the disposable earnings of any individual for any workweek, the 50 per centum specified in clause (A) shall be deemed to be 55 per centum * * *, if and to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period which is prior to the twelve-week period which ends the beginning of such workweek.

"Disposable earnings" is defined as "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld."  15 U.S.C. 1672(b).  As conceded by Paul, 55 percent of his disposable earnings are subject to a wage withholding order under the statute.

**{¶21}**  In *Gest v. Gest*, 9th Dist. Lorain No. 96CA006580, 1998 WL 208872 (Apr. 29, 1998), we addressed the argument that the trial court has the duty to vacate a wage withholding order that attaches more than the federal maxima contained in 15 U.S.C. 1673.  We held that "[t]o the extent that the trial court's order exceeds the maximum withholding limitations under [the federal statute], the withholding employer bears the responsibility to see that no more of the employee's wages are withheld than permitted by [the federal statute]."  *Id*. at * 11, citing *In re Yeauger*, 83 Ohio App.3d 493, 500 (3d Dist.1992) ("Clearly, then, the withholding employer bears the responsibility, under the court order of withholding, to see that no more of the

employee's wages are withheld than permitted by the federal statute."); *see also Madama v. Madama*, 8th Dist. Cuyahoga No. 73288, 1998 WL 563997, * 2 (Sept. 3, 1998) (following *Yeauger*). We further stated that "[t]he withholding limitation does not excuse an obligor from satisfying the entire order for support, but provides only that the entire amount may not in all cases be withheld from wages." *Gest* at * 11.

**{¶22}** Paul has made the same argument as the appellant in *Gest* and, following its guidance, we likewise reject it. Paul's quarrel is with his employer for withholding more than the amount allowed under federal law; it is not with the court for issuing a support order in excess of 55 percent of his disposable earnings or for ordering that his wages be attached to satisfy his support obligations. Indeed, this result is contemplated by R.C. 3121.03(A)(1)(c), which relevantly provides as follows:

> If the court * * * determines that the obligor is receiving income from a payor [employer], the court * * * shall require the payor to do all of the following:
>
> * * *
>
> Continue the withholding at intervals specified in the notice until further notice from the court * * *. To the extent possible, the amount specified to be withheld shall satisfy the amount ordered for support plus any arrearages owed by the obligor under any prior support order that pertained to the same child or spouse * * *. However, in no case shall the sum of the amount to be withheld and any fee withheld by the payor as a charge for its services exceed the maximum amount permitted under * * * 15 U.S.C. 1673(b).

**{¶23}** Accordingly, we overrule Paul's second assignment of error.

### Assignment of Error III

**The trial court erred in modifying spousal support at the time of termination of child support when there was no pending motion and no notice to Husband that such a modification was contemplated.**

**{¶24}** In his third assignment of error, Paul argues that the trial court erred by modifying his spousal support obligation when it terminated child support for the triplets and modified child

support for the parties' other minor child. Specifically, he asserts that the trial court had no authority to modify spousal support, effective June 3, 2012, the date of the triplets' emancipation, absent a pending motion. Lori counters that the separation agreement explicitly allows the modification of his spousal support amount upon the triplets' emancipation. We conclude that the trial court did not err in modifying Paul's spousal support obligation, effective June 3, 2012, without a pending motion.

{¶25} The parties' separation agreement is plain on this point: "once the three older children emancipate * * *, then spousal support *shall increase* by like amount that child support decreases."[4] (Emphasis added.) This provision explicitly indicates the parties' agreement that when the triplets emancipate, spousal support will increase to offset the decrease in child support. Paul entered into this agreement voluntarily and his Civ.R. 60(B) motion for relief from it was denied by the trial court. He cannot now ask the trial court to ignore the agreement's provision for the increase in spousal support upon the triplets' emancipation. *See Thomas v. Thomas*, 159 Ohio App.3d 761, 2004-Ohio-2928, ¶ 16 (11th Dist.) (holding that trial court did not have jurisdiction to terminate spousal support upon unilateral motion of one of the parties, but that it would have jurisdiction if the parties made a joint written request for termination as the agreement provided that modification of terms was possible if "done in writing and signed by both parties").

{¶26} Accordingly, we overrule Paul's third assignment of error.

---

[4] We recognize that the trial court increased Paul's spousal support obligation beyond the amount that his child support obligation decreased. Nevertheless, he has not challenged the trial court's spousal support order that was effective June 3, 2012, on the basis that the order's increase exceeded the decrease in the child support order. Consequently, we decline to consider whether these facts give rise to reversible error.

III.

**{¶27}** Having overruled all of Paul's assignments of error, we affirm the judgment of the Medina County Court of Common Pleas, Domestic Relations Division.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
CONCURS.

MOORE, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

RANDAL A. LOWRY and KENNETH L. GIBSON, Attorneys at Law, for Appellant.

RICHARD J. MARCO, JR., Attorney at Law, for Appellee.