[Cite as *Cireddu v. Clough*, 2014-Ohio-2454.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

JAMES V. CIREDDU, et al.,             :        **O P I N I O N**

      Plaintiff-Appellee/         :
      Cross-Appellant,            **CASE NO.  2013-L-092**

                             :

    - vs -                                 :

STEPHANIE Y. CLOUGH,                   :

      Defendant-Appellant/
      Cross-Appellee.             :

Civil Appeal from the Lake County Court of Common Pleas, Juvenile Division, Case No. 2008 CV 02029

Judgment: Affirmed.

*Hans C. Kuenzi*, Hans C. Kuenzi Co., L.P.A., 1660 W. Second Street, Suite 410, Cleveland, OH 44113 (For Plaintiff-Appellee/Cross-Appellant).

*Stephanie Y. Clough*, pro se, 8060 Wright Road, Broadview Heights, OH 44147 (Defendant-Appellant/Cross-Appellee).

*Rebecca Castell,* 12690 Opalocka Drive, Chesterland, OH 44026 (Guardian ad litem).

DIANE V. GRENDELL, J.

{¶1}   Defendant-appellant/cross-appellee, Stephanie Y. Clough, and plaintiff-appellee/cross-appellant, James V. Cireddu, appeal the judgment of the Lake County Court of Common Pleas, Juvenile Division, granting Clough's Motion to Modify Parenting Time/Visitation and Motion to Recalculate Child Support, giving her equal parenting time and reducing her child support obligation.  The issues before this court

are whether a trial court errs in not ordering discovery of information when a party states that such information does not exist, whether a child support deviation should be awarded when one is not clearly requested or proven, whether a trial court may accept testimony that a party's income for one year was not indicative of his typical income, whether a trial court must determine which party can claim a dependency tax exemption when modifying child support, and whether it is an abuse of discretion to award one parent equal parenting time when there is testimony that the children are happy and secure in the current parenting time arrangement. For the following reasons, we affirm the judgment of the court below.

{¶2} On October 14, 2008, Cireddu filed a Complaint with the Lake County Court of Common Pleas, Juvenile Division, to determine custody of his and Clough's two minor children, J.C., born on January 18, 2006, and G.C., born on December 11, 2008.

{¶3} Following a trial, on August 13, 2009, the magistrate found that Clough "is not likely to honor court-ordered parenting time with [Cireddu]" and the geographical distance between the parents was not conducive to shared parenting. The trial court subsequently adopted this recommendation and Cireddu was granted legal custody. The custody determination was affirmed by this court in *Cireddu v. Clough*, 11th Dist. Lake No. 2010-L-008, 2010-Ohio-5401.[1]

{¶4} Various other issues and motions have been litigated by the parties following the custody determination. These motions led to court orders requiring Cireddu to make the children available for telephone conversations and to provide

---

1. The lower court's judgment was reversed in part, due to an error in stating the appropriate date for the commencement of child support payments.

2

Clough with information about the children. The lower court also held that the children would retain Clough's surname, which was affirmed by this court in *Cireddu v. Clough*, 11th Dist. Lake No. 2011-L-121, 2012-Ohio-2242, ¶ 27.

**{¶5}** Clough subsequently filed a Motion for Allocation of Parental Rights and Responsibilities/Motion for Shared Parenting on August 18, 2011. This Motion was denied by the lower court, on the grounds that no change in circumstances was proven to allow for the modification of custody. This determination was affirmed by this court in *Cireddu v. Clough*, 11th Dist. Lake No. 2012-L-103, 2013-Ohio-2042.

**{¶6}** While the foregoing appeal was pending, Clough filed a Motion to Modify Parenting Time/Visitation and Motion to Recalculate Child Support, on September 17, 2012, as well as a Renewed Motion on October 18, 2012. She asserted that modifying parenting time to allow her equal time with the children would be in their best interest. Clough also asserted that this change in parenting time and the disparity in the parties' incomes would require a modification of the child support award.

**{¶7}** On November 5, 2012, Clough filed a request for Cireddu to provide certain documents, including financial records relating to his income and child care expenses.

**{¶8}** On November 8, 2012, Cireddu filed a Brief in Opposition to Clough's request for increased visitation, arguing that it is not in the children's best interest.

**{¶9}** Proceedings were initially stayed, due to the pending appeal in this court. However, the lower court determined that the issues raised were "unrelated to the pending appeal" and the matter was scheduled for a hearing.

3

{¶10} Clough filed a Motion to Compel on December 20, 2012, asserting that she had not been provided proper documentation in response to her request for records. Cireddu responded that he provided all documents that he had possession of, except for a few that were irrelevant to the proceedings.

{¶11} A hearing was held on the Motion to Modify Parenting Time/Visitation on January 7, 2013.

{¶12} Cireddu testified that he generally works around 40-50 hours in his Fellowship at MetroHealth Hospital, during which time his mother is the caregiver for the two children. He also does consulting work when he has extra time or lessened responsibilities in his primary job and generally works only one or two shifts a week in this capacity, although he has worked up to five days a week.

{¶13} Cireddu testified that he would be willing to allow Clough to exercise a Wednesday visitation which she had not had in the past. He believed that he has been accommodating regarding visitation. He denied that he was non-compliant with court orders to provide phone contact between the children and Clough. Cireddu believed that an increase in visitation, as requested by Clough, would not be in the children's best interest. He explained that J.C. is afraid Clough and her husband will harm each other and that G.C. seems to "regress" when he returns from weekend visitations.

{¶14} Clough, who is currently a Pulmonary Critical Care Fellow at MetroHealth Hospital, testified that she moved from Columbus to a home in Broadview Heights, where she lives with her husband and other child, A.C., born on August 1, 2011. This home is in the same school district as Cireddu's and is a 15 minute drive from his home. She explained that J.C. and G.C. enjoy being in her home, have a play room and a craft

4

room, as well as friends in the neighborhood. Clough testified that her husband would be able to use his flexible work schedule to care for the children.

{¶15} Clough explained that she was having difficulty communicating with Cireddu, primarily in receiving phone time with the children and obtaining information about their activities. She also expressed concern with a reading problem that J.C. was having in school. She believed it is in the best interest of the children to have equal visitation and explained that they would be able to continue attending the same schools, given her proximity to their current residence.

{¶16} On January 23, 2013, the trial court issued a Judgment Entry, denying Clough's Motion to Compel, finding that Cireddu had complied with the discovery request and the remaining items were irrelevant to the proceedings. Clough subsequently filed a Motion to Vacate that Judgment Entry, which was denied.

{¶17} Clough filed a Motion to Adopt Revised Standard Rule V Parenting Time on February 8, 2013, arguing that she should be given standard visitation since she moved in close proximity to the children.

{¶18} On February 14, 2013, Clough filed Combined Interrogatories and Document Requests, again seeking various financial records.

{¶19} On February 15, 2013, the guardian ad litem filed a Motion to Enforce Prior Orders on Visitation, also requesting that the court enforce visitation under Local Rule V. The court ordered that Clough have parenting time pursuant to the court's December 22, 2009 order, pending the outcome of the ongoing litigation.

{¶20} A second hearing was held on April 9, 2013, which was related primarily to Clough's Motion to Recalculate Child Support.

5

**{¶21}** At the beginning of the hearing, Clough asserted that she had just received requested discovery the night before and that she was missing a W-2 from Cireddu's consulting work. She stated that she could proceed with the hearing, but needed the W-2. Cireddu explained that he had not yet obtained the W-2, but that he could provide his year-end paystub. The requested paystub was provided at the conclusion of the hearing, and Clough explained that there were no other records needed for her to rest her case on the child support.

**{¶22}** Cireddu testified that he pays his mother to provide child care, including payment of her bills and expenses. He declared $6,000 for child care on his tax returns for 2010 and 2011, although he pays more than this for his mother's expenses. He believes that she is a good care provider for the children, due to her background as a teacher.

**{¶23}** He explained that in 2012, he had limited responsibilities because of an elective class, which allowed him to work as a consultant, and he made between $105,000 and $110,000. He testified that he would not be able to continue that work to the same extent in the future, that he had made approximately $33,000 for consulting in 2011, and that he would expect to make approximately $60,000 from consulting in future years.

**{¶24}** Regarding the children, Cireddu explained that they are doing well and have an established routine. He expressed concerns regarding behavioral problems when they return from Clough's home, as well as J.C.'s knowledge of the legal proceedings and expression of anxiety after returning. He also noted that the children smell like smoke when returning from Clough's home, and are not always given baths.

6

{¶25} Victoria Cross-Cireddu, Cireddu's mother, testified that she was not employed, to allow her to take care of the children. She explained that she is compensated by Cireddu through his payments for the home and bills.

{¶26} Clough testified that she believed she had overpaid support for the past year, due to Cireddu's consulting income. She presented her calculation of what she believed child support should be, which totaled $493.41 per month.

{¶27} The guardian ad litem, Rebecca Castell, testified regarding her recommendation on the Motion to Modify Parenting Time/Visitation. She believes that the children benefit from their relationships with both parents. She recommended that it was in the best interest of the children to spend equal time with Clough.

{¶28} On May 1, 2013, a Magistrate's Decision was filed. The magistrate found that, although both parents have "demanding careers," they are "dedicated to spending as much time with their children as possible" and both have appropriate childcare arrangements in place. The magistrate also found that the two parents have difficulty in working together to parent the children, although the children were described as happy.

{¶29} Regarding the parties' finances, it was noted that both have had an increase in income and that Cireddu earned over $106,000 doing consulting work in 2012. The magistrate found that, pursuant to Cireddu's testimony, he would not earn as much consulting income in the future. The magistrate found that $60,000 in consulting income would be an appropriate estimate for his typical consulting income. The magistrate also found that Cireddu's childcare expenses amounted to $6,000.

{¶30} The magistrate discussed the factors considered regarding visitation under R.C. 3109.051(D), noting that the children have a good relationship with Clough

7

and their half-sister, the parties live in close proximity, both parents are dedicated to spending time with the children, and the guardian ad litem recommended equal parenting time. The magistrate concluded that Clough should have parenting time equal to Cireddu's possessory time, allowing her to have the children on a weekly rotating basis.

**{¶31}** The magistrate recommended that the Motion to Recalculate Child Support be granted, and that Clough should pay $623.23 per month in child support, attaching the completed child support worksheet.

**{¶32}** Clough filed Objections to Magistrate's Decision on May 13, 2013 and Supplemental Objections on July 5, 2013. She argued, inter alia, that the magistrate erred in calculating child support and by failing to designate who should claim the children for tax purposes and that she was not provided with proper discovery.

**{¶33}** Cireddu also filed Objections to Magistrate's Decision on May 14, 2013 and Supplemental Objections on July 12, 2013. He argued that the magistrate failed to properly weigh the evidence to determine the best interest of the children.

**{¶34}** A hearing was held on the objections on September 6, 2013. On the same date, the court overruled the objections to the Magistrate's Decision and issued a Judgment Entry adopting the Magistrate's Decision in full. Thus, Clough was granted parenting time every other week and ordered to pay $636.23 per month in child support, when health insurance is provided, and $541.70 when health insurance is not provided.

**{¶35}** On appeal, Clough raises the following assignments of error:

**{¶36}** "[1.] The court erred in failing to enforce Appellant's Request for the Production of Documents and subsequent legally court issued subpoena resulting in a

8

failure to afford the Appellant her right of discovery in order to obtain, document, and verify amounts for the calculation of child support for the Appellee's annual income, self-employment income and child care payments.

{¶37} "[2.] The court erred by arbitrarily choosing to use unverified amounts for the calculation of child support for the Appellee's annual income, self-employment income and childcare expenses in place of verified submitted documents.

{¶38} "[3.] The court erred by failing to calculate the Appellant's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 and 3119.24 of the Revised Code.

{¶39} "[4.] The court erred by failing to designate the Parent entitled to claim the federal income tax deduction as required under 3119.82 of the Revised Code."

{¶40} On cross-appeal, Cireddu raises the following assignments of error:

{¶41} "[1.] The trial court erred in modifying appellant's parenting time rights.

{¶42} "[2.] The trial court erred [in] awarding appellant parenting time rights equal in time to the custodial possession time of appellee."

{¶43} In her first assignment of error, Clough argues that the trial court erred in failing to enforce her request for the production of certain documents.

{¶44} Cireddu argues that he complied with the requests to the extent necessary and Clough received the documents required to pursue her motions.

{¶45} "The trial court has broad discretion in regulating the discovery process and, therefore, the trial court's decisions on discovery matters will not be reversed absent an abuse of discretion." *Sweet v. Sweet*, 11th Dist. Ashtabula No. 2004-A-0062,

9

2005-Ohio-7060, ¶ 7, citing *Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 592, 664 N.E.2d 1272 (1996).

**{¶46}** First, Clough argues that Cireddu failed to disclose records showing the hours that he worked in his consulting job and that the trial court erred in failing to compel the production of these documents. Cireddu stated that he gave her the requested documents, although he did not provide her his own personal calendar where he had written his work dates and times. He testified that there is no set schedule as it relates to his consulting jobs and that he fills in at various hospitals when needed. Thus, he could not provide a specific work schedule. Although Clough argues that Cireddu should have had such hours documented through submissions to his program supervisor at MetroHealth, Cireddu testified that his supervisor does not review any of the extra consulting hours Cireddu works and such records are not kept on a monthly basis. Based on Cireddu's response to the request that such records were not available, and the foregoing testimony, the trial court did not abuse its discretion in determining he was not required to provide records which he did not have. *See Dick v. Tab Tool & Die Co.*, 5th Dist. Licking No. 2008-CA-0013, 2008-Ohio-5145, ¶ 24 ("[t]he trial court was free to believe or disbelieve appellant's explanations of why the documents do not exist").

**{¶47}** Clough also argues that she received some child support documentation the day before the hearing, one document on the morning of the hearing, and one document during the afternoon of the hearing. She fails to assert, however, how this constitutes an error. She not only received these specific documents that she requested, but she expressed satisfaction that she had received the documents

10

requested. Specifically, when the court asked if, after receiving evidence of Cireddu's consulting salary, she would "have all of the records that [she] needed" or whether there were still items that were outstanding under her subpoenas, she responded that "that would be it." When asked, after receiving that document, whether there was "any other outstanding discovery" or "records that she was hoping to obtain," she responded "no." Thus, while she claims that she was denied the ability to receive monthly pay stubs for Cireddu's consulting hours, she did not state at that time that they were necessary for the calculation of child support.

{¶48} Clough also appears to take issue with the fact that certain records she attempted to subpoena from Cireddu's employers were not provided and contends that these records related to Cireddu's "employment income." Cireddu provided the documentation from his employment, in the form of W-2s and paystubs and, as noted above, Clough informed the court that she was satisfied she had received the necessary documentation to rest her case.

{¶49} While Clough also argues that she was not given a hearing related to these discovery issues, she was given the opportunity to discuss these issues at the hearings on her motions, as well as adequate opportunity to respond to Cireddu's assertions regarding discovery through written pleadings.

{¶50} Finally, Clough raises an argument regarding whether the trial court erred in failing to use certain documentation to calculate child support. As this issue relates to child support and not discovery, we will address it in the subsequent analysis.

{¶51} Clough's first assignment of error is without merit.

11

{¶52} In Clough's second assignment of error, she argues that the trial court erred in using amounts to calculate child support that were not supported by documentation.

{¶53} "[A] trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion." (Citation omitted.) *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997).

{¶54} Pursuant to R.C. 3119.05, "[w]hen a court computes the amount of child support required to be paid under a court child support order * * * [t]he parents' current and past income and personal earnings shall be verified by electronic means or with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns."

{¶55} While Clough is correct that a child support calculation should be supported by documentation, such documentation was provided and considered by the court to aid in determining Cireddu's income, including his paystubs and/or W-2s from several jobs he held during the past few years. However, an additional factor that was relevant in this case was that Cireddu's consulting income was not consistent from year to year. This was evidenced by the fact that he made approximately $33,000 from consulting work in 2011 but made approximately $106,000 in 2012. Documentation alone cannot be used to determine what Cireddu's income may be in future years. Courts have noted that when a party has a changing income, the trial court can exercise its discretion to make an income determination for the purposes of child support. *See*

12

*Onyshko v. Onyshko*, 11th Dist. Portage No. 2008-P-0035, 2010-Ohio-969, ¶ 90 (in light of the party's "variable incomes," the trial court did not abuse its discretion in determining the applicable income for child support purposes); *Hahn v. Hahn*, 9th Dist. Medina No. 11CA0064-M, 2012-Ohio-2001, ¶ 42 (the trial court did not err in accepting the wife's testimony to estimate her income). As this court has noted in the context of income averaging for the purposes of child support, "'[i]t is no more "fair" to penalize a parent and order much higher child support after an uncommonly good financial year, than it would be to penalize the child for a parent's temporary decline in income.'" (Citation omitted.) *Maiden v. Maiden*, 11th Dist. Lake No. 2010-L-076, 2011-Ohio-2841, ¶ 17.

{¶56} Clough asserts that the trial court also erred in finding that $6,000 was an appropriate amount of child care to credit toward Cireddu. She takes issue with the fact that Cross-Cireddu, the children's caregiver, was not paid a typical wage and that $6,000 specifically allotted to child care was never paid to her. We cannot find that the trial court abused its discretion in determining this amount.

{¶57} A review of the testimony demonstrates that Cireddu claimed this amount for child care on his tax returns. He also testified that he made various payments for his mother, including car payments, house payments, and other expenses. While these payments were not directly for child care, the testimony established that they were made in lieu of actual payments for child care. While it was difficult to differentiate how much of this payment was for child care and how much was for other reasons, such as providing a home for his children, the amount determined by the trial court was not an abuse of discretion.

**{¶58}** Clough also argues that she should have received repayment for past child support, since the amount of child care Cireddu pays was determined by the court to be only $6,000, rather than the $14,400 amount under the past child support order. The trial court in the present matter merely determined that, as of the time of the hearing, $6,000 was a reasonable sum for child care. It did not find that Clough had overpaid for child care over the past years. We find no basis for determining that the trial court abused its discretion in not making such a finding.

**{¶59}** Finally, Clough takes issue with the trial court's failure to allow her to submit new evidence regarding Cireddu's residence in her Objections to the Magistrate's Decision.

**{¶60}** Pursuant to Civ.R 53(D)(4)(d), in ruling on a party's objections to the magistrate's decision, "the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." Clough did not raise this matter in her objections to the Magistrate's Decision but raised it separately in a response to Cireddu's objections. She did not describe the evidence she had in support of her contentions or explain why she could not have discovered this evidence during the course of the proceedings. In fact, when she raised this issue, she even noted that Cireddu's intention to move "likely already [had] been put into motion at the time of the hearings." In addition, this evidence was raised in response to Cireddu's assertion that equal visitation should not be permitted. Since the court upheld the Magistrate's Decision in Clough's favor as to this issue, it was unnecessary for the court to consider the evidence for the purposes that Clough sought to have it admitted.

{¶61} Clough's second assignment of error is without merit.

{¶62} In Clough's third assignment of error, she argues that the trial court erred by failing to order an amount of child support that deviates from the child support schedule and worksheet, since she will be spending equal time with the children and makes less money than Cireddu.

{¶63} R.C. 3119.02 provides that, in any action where a child support order is issued or modified, the court shall calculate the amount of child support pursuant to "the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code." "The court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet, * * * if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule * * * would be unjust or inappropriate and would not be in the best interest of the child." R.C. 3119.22. "Any court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination." *Marker v. Grimm*, 65 Ohio St.3d 139, 601 N.E.2d 496 (1992), paragraph three of the syllabus.

{¶64} As an initial matter, it is questionable whether this matter was properly raised before the trial court. Although Clough initially asserted in her Motion to Recalculate Child Support that a change in visitation and the parties' incomes warranted a change in the child support, during the hearing, she did not explain her basis for a

15

deviation from the child support worksheet. She submitted to the trial court a child support worksheet that listed child support at $439.41.

{¶65} Clough did note that her estimated recalculation did not take into account any changes in visitation, but presented no further information in support of a deviation and did not state specifically that she was requesting a deviation. Clough also failed to present evidence regarding the deviation, showing why the child support award was unjust, or why the support ordered under the worksheet would not be in the best interest of the child. In the absence of such evidence, the trial court has little basis to determine that a deviation was in the best interest of the children or was necessary in this case.

{¶66} Although Clough argues that equal parenting time provides a sufficient basis to grant a deviation, a trial court is not required to grant a deviation on such grounds, especially where, in this case, there is a lack of evidence to show the costs that she would incur through this increased parenting time. Courts have concluded that equal parenting time does not mandate a deviation from child support obligations. *See Peters v. Peters*, 11th Dist. Lake No. 2004-L-198, 2006-Ohio-3644, ¶ 19-23; *Glassner v. Glassner,* 160 Ohio App.3d 648, 2005-Ohio-1936, 828 N.E.2d 642, ¶ 48 (5th Dist.).

{¶67} This court has also emphasized that there is "'no authority for *requiring* a trial court to deviate from the child support guidelines merely because a deviation would be permissible, or even desirable.'" (Citations omitted.) (Emphasis sic.) *Kosovich v. Kosovich*, 11th Dist. Lake No. 2004-L-075, 2005-Ohio-4774, ¶ 17. Further, when the trial court properly calculates the child support and the court does not deviate from that amount, "the court does not need to justify its decision." *Id.* at ¶ 18.

{¶68} Clough's third assignment of error is without merit.

16

**{¶69}** In Clough's fourth assignment of error, she argues that the trial court erred by failing to designate which parent should be permitted to claim a tax deduction for the children.

**{¶70}** Cireddu argues that there is a presumption in favor of the residential parent receiving the tax exemption.

**{¶71}** "[T]he trial court has broad discretion in making a determination concerning the allocation of dependency exemptions for tax purposes." *Stauffer v. Stauffer*, 11th Dist. Geauga No. 2008-G-2860, 2009-Ohio-998, ¶ 32.

**{¶72}** Pursuant to R.C. 3119.82, "[w]henever a court * * * modifies, reviews, or otherwise reconsiders a court child support order, it shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes." Such a designation is generally required when issuing a child support order. *See Henderson v. Henderson*, 3rd Dist. Mercer No. 10-01-17, 2002-Ohio-2720, ¶ 9.

**{¶73}** In the present case, the court did not explicitly state which parent was designated for the purposes of the tax exemption. However, the trial court did note in its September 9, 2013 Judgment Entry on the objections to the Magistrate's Decision that "[a]ll orders currently in effect which are not modified by the explicit terms of this order remain in full force and effect." On August 13, 2009, a Magistrate Order was issued, and subsequently adopted by the trial court, ordering that Cireddu claim the children as dependents for tax purposes for every year thereafter. Since this order was not modified, it remains in full force and effect and acts as the designation of the court on the tax exemption issue. The determination to allow Cireddu to retain the tax exemption

17

is also consistent with the presumption in favor of the custodial parent in the allocation of the exemption, in the absence of evidence supporting a contrary determination. *See Mustafa v. Elfadli*, 5th Dist. Delaware No. 12 CAF 08 0058, 2013-Ohio-1644, ¶ 74, citing *Singer v. Dickinson*, 63 Ohio St.3d 408, 411, 588 N.E.2d 806 (1992).

**{¶74}** Clough's fourth assignment of error is without merit.

**{¶75}** Since Cireddu's assignments of error on cross-appeal both relate to the determination of visitation/parenting time and whether it is in the children's best interest, we will consider them jointly.

**{¶76}** "A trial court has broad discretion to modify visitation rights." *Victor v. Miller*, 11th Dist. Lake No. 2000-L-177, 2002 Ohio App. LEXIS 1905, 10 (Apr. 19, 2002); *Braatz v. Braatz*, 85 Ohio St.3d 40, 706 N.E.2d 1218 (1999), paragraph two of the syllabus (a trial court, in considering a change in visitation rights, "in its sound discretion shall determine visitation that is in the best interest of the child").

**{¶77}** "Modification of visitation rights is governed by R.C. 3109.051." (Citation omitted). *Braatz*, at paragraph one of the syllabus. "Pursuant to R.C. 3109.051(D), * * * the trial court shall consider the fifteen factors enumerated therein," to determine the best interest of the child. *Id.* at 45. "The party requesting a change in visitation rights need make no showing that there has been a change in circumstances in order for the court to modify those rights." *In re S.B.*, 11th Dist. Ashtabula No. 2010-A-0019, 2011-Ohio-1162, ¶ 101.

**{¶78}** Cireddu asserts that Clough must prove the existing parenting time arrangement is not in the best interest of the children and that the children were not doing well under these circumstances. In determining whether modification of visitation

18

is proper, this court has considered whether the change in visitation is generally in the child's best interest, not only whether the present circumstances are not in the best interest of the child. *S.B.* at ¶ 101; *Braden v. Braden*, 11th Dist. Portage No. 2006-P-0028, 2006-Ohio-6878, ¶ 36. As discussed above, the best interest determination is arrived at by evaluating the statutory factors. If the lower court concluded that increased visitation with Clough was in their best interest, it would follow that not allowing such an increase is not in their best interest. Thus, even if the children were doing well in their current living arrangement with Cireddu, this does not mean that it is not in their best interest to have increased visitation with Clough.

{¶79} Cireddu also argues that it was not in the children's best interest for Clough to be granted increased parenting time, in an amount giving each parent equal time with the children. While Cireddu places great emphasis on the fact that the children are currently doing well in his home, all of the factors required under R.C. 3109.051(D) must be considered by the trial court. *S.B.* at ¶ 102 (one factor under R.C. 3109.051(D) "is not determinative" of the best interest issue).

{¶80} In the present case, the Magistrate's Decision listed each of the appropriate factors to consider and provided specific analysis as to each relevant factor. It specifically noted that the children have a good relationship with Clough and their half-sister, that the parties live in close proximity, that both parents are dedicated to spending time with the children, and that the guardian ad litem recommended equal parenting time. Thus, the court complied with the requirement to determine the best interest of the children pursuant to R.C. 3109.051(D).

{¶81} Cireddu raises several specific arguments to support his contention that the trial court abused its discretion in granting Clough increased visitation. First, he asserts that the magistrate neglected to address the fact that the children's grandmother, Cross-Cireddu, would no longer be able to care for the children since she would lose the full amount of compensation she was paid to take care of the children on a daily basis. We note, however, that this appears to be more about the inconvenience to Cireddu and his mother, rather than in relation to the best interest of the children. Even if Cross-Cireddu was no longer able to care for the kids, which she did not testify to, there is no basis for finding that any other caregiving situation arranged by Cireddu will not be in their best interest.

{¶82} Cireddu also argues that the magistrate failed to properly address Clough's unwillingness to facilitate a relationship with him and the difficulty that the two have in interacting with each other, based on Clough's actions toward him. It is clear that the magistrate took this factor into consideration, noting that they have an "inability to get along." However, it does not appear that a change in the visitation schedule will have an impact on the children or the relationship of the parties, given that they will still have to communicate and interact when exchanging the children and discussing matters relevant to the children. Allowing extended visitation will not alter this fact. Further, as the court noted, while the two parents have difficulty cooperating, the evidence established that Clough "exercises her court-ordered parenting time regularly without incident or interference." No evidence was presented by Cireddu that Clough has denied him information or phone calls with the children in the past while they were exercising their visitation.

**{¶83}** Cireddu also asserts that spending more time with Clough will serve to increase the children's anxiety, given that it will disrupt their lives, and that the conditions at Clough's home, including discussion of legal matters, will have a detrimental impact on the children. The court specifically noted that there was no psychological evidence presented to back up the claims that the children exhibited trauma when returning from their mother's home. The court ultimately found that, regardless of Cireddu's testimony, the children did not exhibit any mental health issues and that neither parent presents a risk of harm to the children. While the trial court may not have accepted all of Cireddu's testimony regarding the effects visitation has on the children, appellate courts generally defer to the lower court on matters of credibility, especially in cases involving child custody/visitation, "where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

**{¶84}** Also, the court did not err in failing to find that the children's lives would be "very fractionated" or that the new visitation arrangement would interfere with their activities or abilities to maintain friendships, as argued by Cireddu, given that the children will remain in the same school district, and the parties live only 15 minutes from each other. There appears to be no reason why the children could not continue on with the same schooling, friendships, and activities, regardless of which home they may be staying at during a given week.

**{¶85}** Finally, Cireddu takes issue with the GAL's recommendation, asserting that the GAL had not seen the children recently. However, it is noteworthy that the GAL has been involved in the case since May of 2011 and has conducted an investigation

into the best interest of the children as it relates to increased time with their mother. She has also met with the children in the past. She issued the previous GAL report on the similar motion requesting shared parenting, which raised comparable considerations. The trial court was entitled to consider the GAL's recommendation and afford it the appropriate weight.

{¶86} Based on the foregoing, the existence of multiple factors outlined by the court in favor of the change in visitation, and the applicability of the abuse of discretion standard, we cannot find that the lower court erred in adopting the Magistrate's Decision and granting Clough increased visitation with the children.

{¶87} Cireddu's first and second assignments of error on cross-appeal are without merit.

{¶88} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Juvenile Division, granting Clough's Motion to Modify Parenting Time/Visitation and Motion to Recalculate Child Support, is affirmed. Costs to be taxed against the parties equally.


TIMOTHY P. CANNON, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

22