GLASSNER, Appellee and Cross–Appellant,

v.

GLASSNER, Appellant and Cross–Appellee.

[Cite as *Glassner v. Glassner,* 160 Ohio App.3d 648, 2005-Ohio-1936.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2004CA00154.

Decided April 18, 2005.

James Adlon, for appellee and cross-appellant.

J. Leslie Markijohn, for appellant and cross-appellee.

EDWARDS, Judge.

{¶ 1} Appellant and cross-appellee, Rodney Glassner, appeals from the decision of the Stark County Court of Common Pleas, Domestic Relations Division, which granted him a divorce from appellee and cross-appellant, Elisa Glassner. Elisa has filed a cross-appeal.

## STATEMENT OF THE FACTS AND CASE

{¶ 2} Rodney Glassner ("appellant") and Elisa Glassner ("appellee") were married on November 16, 1991. Two children were born as issue of the marriage, namely, Joshua, born December 30, 1996, and Gianna, born March 22, 1999.

{¶ 3} On August 15, 2003, appellee filed a complaint for divorce against appellant. The matter then proceeded to trial before the court on April 21, 2004. The following evidence was adduced at trial.

{¶ 4} At trial, appellant, who is a high school graduate and who was 44 years old and in good health at the time, testified that he had been employed by Classic Pools since April 2003 and that he earned $20 an hour. Since the job is a seasonal job, appellant is laid off over the winter. In 2003, appellant earned $17,102.50 and received $1,530 in unemployment compensation, for a total gross income of $18,632.50.

{¶ 5} Before he married appellee, appellant was employed by Smucker's in Orrville part-time for six or seven months. When the parties decided to get married, they decided that appellant should go back into the construction trade. Early in the parties' marriage, appellant did cement work in Ohio, Illinois, and Virginia before his son was born and he became a stay-at-home father. While working in Chicago, appellant earned approximately $34,000 a year in the cement business "because the rate was so high, * * * benefits and hourly wage in Chicago at that time was almost $40.00 an hour." Appellant testified that he made $30,000 or more a year three times in his life at most and that some years, he was lucky to make $20,000. When the parties moved from Chicago to Virginia in 1996, appellant took a $14–an–hour pay cut.

{¶ 6} According to appellant, after their son was born, the parties agreed that appellant would stay home and take care of the children rather than work outside the home because daycare was expensive. The parties decided that it would be best for appellant to stay at home since his income was less than appellee's and so that appellee could travel for work. From 2000 through 2002, the parties lived in Detroit, Michigan, and then moved back to Ohio in 2002. Testimony was adduced at trial that after the parties moved to Michigan, appellant was the primary caregiver for the children and took the children to preschool and doctor appointments, cooked, cleaned, did laundry, and attended parent-teacher conferences.

{¶ 7} At the April 21, 2004, trial, appellee testified that she was 36 years old, in good health, and that she had received a Master of Business Administration ("MBA") degree in 2002 from Michigan State. Appellee, who had received her Bachelor of Arts ("BA") degree prior to her marriage to appellant, testified that her MBA degree was paid for entirely by Ford Motor Company, her employer. As of the date of the trial, appellee had been employed by Ford Motor Company for approximately 15 years and was employed as a sales zone manager. In 2003, appellee earned $90,825.33 through her employment with Ford. Appellee was required to relocate frequently in order to advance at Ford. Appellant testified that every time they moved, appellee got a promotion and that she "never wanted to turn down a move."

{¶ 8} At the trial, appellant presented a statement showing that his monthly expenses were $4,145, and appellee submitted a statement showing that her monthly expenses were $5,338.

{¶ 9} Pursuant to a judgment entry filed on April 28, 2004, the trial court granted the parties a divorce on grounds of incompatibility and approved the parties' shared-parenting plan. Pursuant to the shared-parenting plan, the parties agreed that "physical placement of the children shall be alternated between the parents on an alternating week schedule" and that the "parent not having physical placement of the children shall have a mid-week placement period

with the children on Wednesday each week from 3:00 p.m. until the start of school on Thursday." With respect to child support, the trial court made the following findings of fact in its entry:

{¶ 10} "7. The Court finds the husband's gross income to be $18,632 and the wife's annual gross income to be $90,825. According to the child support schedules and worksheet calculations, the Court finds that annual child support for two children is $17,583. The husband's obligation is $2,993, or 17%, and the wife's obligation is $17,583,[1] or 83% (See attached worksheet.) [2]

{¶ 11} "8. Because this amount of child support is unjust, inappropriate, and not in the best interest of the child, the Court deviates from the schedules for the following reasons: Sec. 3113.215(B)(3)(a) through (o). The parties have agreed in their shared parenting plan to equally sharing time with the children and related expenses."

{¶ 12} The trial court further ordered appellee to pay appellant $1,800 a month in spousal support effective May 1, 2004, and that such support would terminate upon either party's death or appellant's remarriage, or after four years, whichever came first. In addition, the trial court ordered that "[n]either party shall be ordered to exchange child support."

{¶ 13} Appellant now raises the following assignments of error on appeal:

{¶ 14} "I. The trial court abused its discretion by failing to award appellant child support.

{¶ 15} "II. The trial court abused its discretion by failing to award the appropriate amount of spousal support to appellant."

{¶ 16} In turn, appellee raises the following assignment of error is her cross-appeal:

{¶ 17} "If this court remands the trial court's support award, it must also remand the trial court's spousal support award."

I

{¶ 18} Appellant, in his first assignment of error, argues that the trial court abused its discretion in failing to award appellant child support for the parties' two minor children. We agree.

---

1. The correct figure is $14,590 ($17,583.00 minus $2,993).

2. The child support worksheet indicated that appellee's child-support obligation would be $630.52 per month after allowing a deviation from the guideline amount of child support because each parent had the children 50 percent of the time.

{¶ 19} It is well established that a trial court's decision regarding child-support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 20} At the time a trial court orders child support, a child-support-guideline-computation worksheet must be completed and made a part of the trial court's record. See *Cutlip v. Cutlip*, Richland App. No. 02CA32, 2002-Ohio-5872, 2002 WL 31412399, citing *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, at paragraph one of the syllabus; R.C. 3119.022. The guideline amount is rebuttably presumed to be the correct amount of child support due, although deviation from the guidelines is addressed in the worksheet. See *Marker*, supra, and R.C. 3119.03; R.C. 3119.022.

{¶ 21} R.C. 3119.24 states as follows:

{¶ 22} "(A)(1) A court that issues a shared parenting order in accordance with section 3109.04 of the Revised Code shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in section 3119.022 of the Revised Code, through the line establishing the actual annual obligation, except that, if that amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount.

{¶ 23} "(2) The court shall consider extraordinary circumstances and other factors or criteria if it deviates from the amount described in division (A)(1) of this section and shall enter in the journal the amount described in division (A)(1) of this section its determination that the amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting its determination.

{¶ 24} "(B) For the purposes of this section, 'extraordinary circumstances of the parents' includes all of the following:

{¶ 25} "(1) The amount of time the children spend with each parent;

{¶ 26} "(2) The ability of each parent to maintain adequate housing for the children;

{¶ 27} "(3) Each parent's expenses, including child care expenses, school tuition, medical expenses, dental expenses, and any other expenses the court considers relevant;

{¶ 28} "(4) Any other circumstances the court considers relevant."

{¶ 29} In turn, R.C. 3119.23 provides as follows:

{¶ 30} "The court may consider any of the following factors in determining whether to grant a deviation pursuant to section 3119.22 of the Revised Code:

{¶ 31} "(A) Special and unusual needs of the children;

{¶ 32} "(B) Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination;

{¶ 33} "(C) Other court-ordered payments;

{¶ 34} "(D) Extended parenting time or extraordinary costs associated with parenting time, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet, through the line establishing the actual annual obligation, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of parenting time granted by court order;

{¶ 35} "(E) The obligor obtaining additional employment after a child support order is issued in order to support a second family;

{¶ 36} "(F) The financial resources and the earning ability of the child;

{¶ 37} "(G) Disparity in income between parties or households;

{¶ 38} "(H) Benefits that either parent receives from remarriage or sharing living expenses with another person;

{¶ 39} "(I) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;

{¶ 40} "(J) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;

{¶ 41} "(K) The relative financial resources, other assets and resources, and needs of each parent;

{¶ 42} "(L) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;

{¶ 43} "(M) The physical and emotional condition and needs of the child;

{¶ 44} "(N) The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;

{¶ 45} "(O) The responsibility of each parent for the support of others;

{¶ 46} "(P) Any other relevant factor."

{¶ 47} In the case sub judice, the trial court, in its April 28, 2004 entry, indicated that pursuant to the child-support guidelines and worksheet, the annual child support owed for the children was $17,583 and that while appellant's obligation was $2,993, or 17 percent, appellee's obligation was 83 percent, or $14,590. The guideline worksheet indicated that after a deviation was allowed because each parent had the children 50 percent of the time, appellee's child support obligation would be $630.52 a month. The trial court, however, declined to award child support, finding that the amount of child support was unjust, not in the best interest of the children, and was inappropriate. In its entry, the trial court stated that it was deviating from the schedule for the following reasons: "3113.215(B)(3)(a) through (o).[3] The parties have agreed in their shared parenting plan to equally sharing time with the children and related expenses."

{¶ 48} However, we concur with appellant that the fact that appellant and appellee equally share time with the children does not in and of itself justify a deviation to "0" of the child-support-guideline amount. As is stated above, there is a great disparity between the parties' income, with appellant earning $18,632 in 2003 and appellant earning $90,825. In consideration of such disparity and in view of the fact that there is nothing in the shared-parenting plan placing the burden of any unusual or extraordinary parenting expenses on appellee,[4] it was an abuse of discretion for the trial court to decline to award child support to appellant.

{¶ 49} Based on the foregoing, appellant's first assignment of error is sustained.

## II. Cross–Appeal

{¶ 50} Appellant, in his second assignment of error, argues that the trial court abused its discretion in failing to award appellant the appropriate amount of spousal support. Appellee, in her sole assignment of error on cross-appeal, argues that if this court remands this matter with respect to the trial court's child

---

3. R.C. 3113.215 has been repealed and replaced by R.C. 3119.23.

4. As is stated above, the trial court, in its entry, noted that the parties, in their shared-parenting plan, agreed to equally share "related expenses."

support award, it must also remand this matter with respect to the trial court's spousal support award. We agree.

{¶ 51} As noted by appellee in her brief, the trial court's award of $1,800 a month in spousal support to appellant was based, in part, on the trial court's decision not to require appellee to pay child support to appellant. Child support, as a "court-ordered payment," is a relevant factor in determining spousal support. R.C. 3105.18(C)(1)(i). For that reason, based on our decision to remand this matter with respect to child support, the trial court must also reconsider, on remand, its award of spousal support to appellant.

{¶ 52} Appellant's second assignment of error and appellee's assignment of error on cross-appeal are sustained.

{¶ 53} Accordingly, the judgment of the Stark County Court of Common Pleas, Domestic Relations Division, is reversed, and this matter is remanded to the trial court for further proceedings.

Judgment reversed
and cause remanded.

GWIN, P.J., and WILLIAM B. HOFFMAN, J., concur.