[Cite as *Hattenbach v. Watson*, 2016-Ohio-5648.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

MERYL HATTENBACH

    Plaintiff-Appellee

v.

RICHARD J. WATSON

    Defendant-Appellant

:
:
:
:
:
:
:
:
:
:
:

Appellate Case No. 27071

Trial Court Case No. 12-DR-304

(Domestic Relations Appeal from
 Common Pleas Court)

. . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of September, 2016.

. . . . . . . . . .

ANNE CATHERINE HARVEY, Atty. Reg. No. 0054585, Anne Catherine Harvey, L.L.C.,
345 North Main Street, Unit 2, Springboro, Ohio 45066
    Attorney for Plaintiff-Appellee

RICHARD J. WATSON, 2540 Hillview Avenue, Dayton, Ohio 45419
    Defendant-Appellant, *pro se*

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Richard Watson appeals from an order of the Common

Pleas Court of Montgomery County, Division of Domestic Relations, overruling his motion

to reduce his child support obligation. He contends that he is entitled to a credit, an

offset, or a downward deviation.

{¶ 2} We conclude that the trial court did not abuse its discretion when it determined that Watson was not entitled to a downward deviation in his child support obligation, due to the large disparity in the parties' income. Accordingly, the order of the trial court is Affirmed.

## I. The Shared Parenting Plan

{¶ 3} Watson and Meryl Hattenbach were married in 2005, and have two minor children. The parties were divorced in October 2013. The Final Judgment and Decree of Divorce incorporated a Shared Parenting Plan agreed to by the parties.

{¶ 4} The Shared Parenting Plan, at Section 4.1, provides that "[b]oth parents shall be considered residential and custodial parents, although the Mother is the primary parent strictly for school placement purposes. This designation shall not be considered as dispositive of any other allocation of parental rights and responsibilities either now or at any time in the future." Dkt. No. 54. The Plan gives Watson parenting time amounting to approximately 40% of the year. *Id.* Section 5.2 of the Plan further states that "[d]uring the time each parent has physical custody and residential status, they shall have all rights as a legal guardian of [the children]." *Id.* Finally, the Plan provides that "Father/Obligor shall pay $500.00 per month per child for two (2) children as and for child support, pursuant to the attached child support computation worksheet, effective October 1, 2013. * * * The parties acknowledge that the child support * * * is an approximate 22% deviation from the Obligor's amount of support." *Id.* The parties agreed in the Plan that the deviation was warranted because Watson would have 40% of the parenting time.

{¶ 5} In September 2014, Watson moved to reduce his child support obligation. In October 2014, Hattenbach moved for an increase in Watson's child support obligation. Three days of hearing were conducted in early 2015, after which the magistrate issued a decision increasing Watson's child support obligation. Watson objected to the magistrate's decision. The trial court overruled his objections and adopted the magistrate's decision. Watson appeals.

**II. Watson Is Not Entitled to an Automatic Child Support Reduction or Offset, and the Trial Court Did Not Abuse its Discretion by Overruling his Request for a Downward Deviation**

{¶ 6} Watson's sole assignment of error states as follows:

THE MONTGOMERY COUNTY COMMON PLEAS COURT ERRED IN THAT THE APPELLANT IS ENTITLED TO AN AUTOMATIC CREDIT IN HIS CHILD SUPPORT PAYMENTS FOR THE TIME THE CHILDREN RESIDE WITH HIM PURSUANT TO R.C. 3119.07(A) IN CASES WHERE THE SHARED PARENTING PLAN ALLOCATED PARENTAL RIGHTS WITH RESPECT TO WHERE THEY ARE PHYSICALLY LOCATED OR WITH WHOM THE CHILD IS RESIDING AT A PARTICULAR POINT IN TIME AS PROVIDED IN R.C. 3109.04(L)(6).

{¶ 7} Watson contends that the trial court erred by failing to give him a reduction in his child support obligation based upon the large amount of time the children spend with him. He argues that, pursuant to the Shared Parenting Plan, he is the sole

residential, custodial, and legal parent when the children are with him, and therefore R.C. 3119.07(A) mandates that he should receive a credit or offset for the time the children are with him.

{¶ 8} Watson argues that he should receive an offset or credit pursuant to R.C. 3119.07(A), which provides that "a parent's child support obligation for a child for whom the parent is the residential parent and legal custodian shall be presumed to be spent on that child and shall not become part of a child support order * * *." However, R.C. 3119.07(A) [formerly R.C. 3113.215(C)], does not apply to shared parenting agreements because under shared parenting agreements both parents are considered residential parents at all times. *Pauly v. Pauly*, 80 Ohio St.3d 386, 388–389, 686 N.E.2d 1108 (1977). *Accord* R.C. 3109.04(L)(6): "Unless the context clearly requires otherwise and except as otherwise provided in the order, if an order is issued by a court pursuant to this section and the order provides for shared parenting of a child, each parent, regardless of where the child is physically located or with whom the child is residing at a particular point in time, as specified in the order, is the 'residential parent,' the 'residential parent and legal custodian,' or the 'custodial parent' of the child."

{¶ 9} Watson attempts to distinguish *Pauly*, claiming that R.C. 3119.07 is applicable to this case, by arguing that the context of the Shared Parenting Plan clearly demonstrates that the parties intended to make one parent a non-residential, non-custodial parent during the time they are not with the children. In support, he references Section 5.2, which he contends gives all legal, custodial and residential rights to the parent exercising physical custody of the children. He also cites certain other provisions of the Plan – for example, provisions requiring that the parent with physical custody of the

children must transport the child to school and extracurricular activities, which he claims support his argument.

{¶ 10} We find Watson's argument unpersuasive. Section 5.2 does state that the party in possession of the children "has all rights as legal guardian." However, it does not state that those rights are to the exclusion of the non-possessory parent, or that the non-possessory parent loses any rights when not in possession of the children. Indeed, it appears that Watson advances the idea that only the parent with the children has any rights under the Plan. This does not comport with the concept of shared parenting, or with the terms of the parties' Plan, which must be read in context with the cited Section 5.2. For example, Section 4.1 of the Plan states that both parents are residential and custodial parents. It does not differentiate between the parent with possession and the parent without. Additionally, Section 2.1(a) grants each parent "the right to make decisions concerning the children's health, social situation, morals, welfare, education, legal and economic environment." This section does not limit those rights to times when the parent has the child. Likewise, Section 6.1 provides that the parties shall "jointly decide all major issues regarding the children * * * including but not limited to academic matters, non-emergency health-care matters, extracurricular activities, and summer activities and camps." In short, nothing in the Shared Parenting Plan leads us to conclude that it provides for the relinquishment of rights during the time a parent is not with the children. Thus, we conclude that Watson's argument lacks merit.

{¶ 11} We now turn to the issue of whether the trial court abused its discretion by denying Watson's request for a downward deviation in his support obligation. R.C. 3119.24 provides that, in shared parenting cases, the trial court must use the standard

child support worksheet set forth in R.C. 3119.022. Pursuant to R.C. 3119.03, "the amount of child support that would be payable under a child support order, as calculated pursuant to the basic child support schedule and applicable worksheet through the line establishing the actual annual obligation, is rebuttably presumed to be the correct amount of child support due."

{¶ 12} There is no statutory provision for any credit or offset to a child support obligation when the parties agreed to shared parenting; therefore, a trial court may not automatically deviate from the worksheet amount in order to credit an obligor for any time the child spends with that parent. *Pauly, supra*; *Hubin v. Hubin*, 92 Ohio St.3d 240, 749 N.E.2d 749 (2001).

{¶ 13} However, R.C. 3119.24 permits a trial court to deviate from the guideline calculation if that amount "would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of extraordinary circumstances of the parents or because of any other factors or criteria as set forth in R.C. 3119.23 of the Revised Code." The fact that parents equally share in parenting time does not, by itself, justify a deviation in the amount of child support. *Glassner v. Glassner*, 160 Ohio App.3d 648, 2005-Ohio-1936, 828 N.E.2d 642, ¶ 48 (5th Dist.). Instead, it is just one factor to be considered by the trial court. The "extraordinary circumstances listed in R.C. 3119.24(B) include (1) the amount of time the children spend with each parent, (2) the ability of each parent to maintain adequate housing for the children, (3) each parent's expenses, and (4) any other circumstances the court considers relevant." R.C. 3119.23 adds an additional sixteen factors a trial court may consider in determining whether to deviate from the guideline, including income disparity between the parties.

**{¶ 14}** "The party seeking to rebut the basic child support schedule has the burden of presenting evidence which demonstrates that the calculated award is unjust or inappropriate and would not be in the best interest of the child." *Murray v. Murray*, 128 Ohio App.3d 662, 671, 716 N.E.2d 288 (12th Dist.1999); *accord MacMurray v. Mayo*, 10th Dist. Franklin No. 07AP-38, 2007-Ohio-6998, ¶ 30. "As with most matters pertaining to child support, the decision to deviate from the actual annual obligation is discretionary and will not be reversed absent an abuse of discretion." *Havens v. Havens*, 10th Dist. Franklin No. 11AP-708, 2012-Ohio-2867, ¶ 6; *In re Custody of Harris*, 168 Ohio App.3d 1, 2006-Ohio-3649, 857 N.E.2d 1235, ¶ 60–61 (2d Dist.).

**{¶ 15}** The trial court noted that at the time of the divorce, Watson had an income of $108,296, while Hattenbach, who was unemployed, had a minimum wage imputed income of $16,328. At the time of the hearings, Watson had an annual income of $109,378, and he testified that his income in 2015 would be $110,473. Hattenbach had become employed at a local grocery store, and had opened a grocery business of her own. Her total annual income was $14,533.79. The trial court found that the downward deviation was no longer just, reasonable, appropriate, or in the best interest of the children. Hattenbach testified that she was experiencing more expenses because the children were eating more, needed more clothes, and becoming involved in more activities with associated fees and costs.

**{¶ 16}** We conclude that the trial court did not abuse its discretion. Watson's sole assignment of error is overruled.

## III. Conclusion

**{¶ 17}** Watson's sole assignment of error having been overruled, the order of the trial court from which this appeal is taken is Affirmed.

. . . . . . . . . . . . .

FROELICH and HALL, JJ., concur.

Copies mailed to:

Anne Catherine Harvey
Richard J. Watson
Hon. Denise L. Cross