[Cite as *Dickerson v. Dickerson*, 2018-Ohio-3502.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| RICHARD W. DICKERSON | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2018-CA-21 |
| | : | |
| v. | : | Trial Court Case No. 2016-DS-0208 |
| | : | |
| MICHELLE L. DICKERSON | : | (Domestic Relations Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 31st day of August, 2018.

. . . . . . . . . . .

ROBERT K. HENDRIX, Atty. Reg. No. 0037351, 77 W. Main Street, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellant

JAMES E. HEATH, Atty. Reg. No. 0003757, 5 E. Columbia Street, Springfield, Ohio 45502
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

HALL, J.

{¶ 1} Father appeals from an order of the Clark County Common Pleas Court, Domestic Relations Division, terminating a prior shared-parenting decree and awarding custody of his two children to Mother, his former wife. Father also appeals the court's retroactive child-support order.

{¶ 2} We conclude that the record does not support a finding that the trial court's custody decision was an abuse of the court's discretion. We also conclude that the trial court did not abuse its discretion by ordering Father to begin paying child support on the date that Mother filed the motion requesting support. We affirm the trial court's judgment.

## I. Background

{¶ 3} The parties were married in 2006 and have two children together, a daughter, born in 2000,[1] and a son, born in 2007. The parties were divorced in April 2016 and a shared-parenting decree was entered. In the shared-parenting plan included in the decree, the parties agreed that the children would alternate weeks with each parent (one week they would live with Mother and the next week with Father). The parties further agreed that neither would pay child support. They agreed that they would split any healthcare-related expense incurred for the children that was not covered by insurance, and they agreed to split all school fees.

{¶ 4} On March 30, 2017, Mother filed a motion asking the court to terminate shared parenting and to name her the children's residential parent and legal custodian. The motion also asked that Father pay her child support. The court appointed a guardian

---

[1] While we were considering this appeal, the daughter turned 18 years old, and is no longer a minor. Neither party has suggested that the fact affects this appeal, so we consider the daughter a minor for purposes of our review here.

ad litem (GAL) for the children on June 26, 2017, and scheduled a hearing for October 31, 2017. On the hearing date, a continuance was granted for Father to obtain a new lawyer. The hearing was held over two days, on November 30, 2017, and January 23, 2018. At the hearing, Mother and Father testified, as well as Father's girlfriend. The GAL also testified and submitted a written report and recommendations.

{¶ 5} On January 30, 2018, the trial court entered an order terminating shared parenting and designating Mother the children's residential parent and legal custodian and granting Father parenting time. The court also ordered Father to pay Mother child support retroactive to the date that Mother filed her motion.

{¶ 6} Father appeals.

## II. Analysis

{¶ 7} Father presents two assignments of error for our review. The first challenges the child-support order, and the second challenges the custody decision.

## A. Retroactive child support

{¶ 8} Father argues in the first assignment of error that the trial court abused its discretion by ordering that child support begin on the date that Mother filed her motion for support.

{¶ 9} "Whether to make a modification of support retroactive to the date of the motion is a question left to the sound discretion of the trial court." (Citations omitted.) *Lightle v. Lightle*, 2d Dist. Champaign No. 2012 CA 8, 2012-Ohio-3284, ¶ 8. Review of a court's exercise of discretion looks for abuse, that is, a decision that is unreasonable, unconscionable, or arbitrary. "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were

it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Ents., Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 10}** "[A] trial court may, but is not required to, make a modification of support retroactive to the date the motion was filed." *Wright v. Reck*, 2d Dist. Miami No. 2001-CA-30, 2001 WL 1346038, *2 (Nov. 2, 2001). We have said that "[i]t will often be equitable to apply a modification retroactively to the date of the motion, due to the substantial amount of time that it frequently takes to dispose of motions to modify support obligations * * *." *Lightle* at ¶ 8. "Normally, it is expected that a trial court make the date of a motion's filing as the retroactive start date of the new orders because the law assumes that the set of circumstances in place at the time of the filing * * * continues throughout the pendency of the proceeding." *Winn v. Wilson*, 12th Dist. Butler No. CA2017-04-052, 2018-Ohio-1010, ¶ 40. Accordingly, the assumption is that ordering child support to begin on the date of the motion is reasonable, " 'unless special circumstances dictate otherwise.' " *Id.* at ¶ 39, quoting *Kauza v. Kauza*, 12th Dist. Clermont No. CA2008-02-014, 2008-Ohio-5668, ¶ 21. *See also State ex rel. Draiss v. Draiss*, 70 Ohio App.3d 418, 421, 591 N.E.2d 354 (9th Dist.1990) (" '[a]bsent some special circumstances, an order of a trial court modifying child support should be retroactive to the date such modification was first requested' "). It follows that the court need offer an explanation only if the court chooses a different date. *See Lightle* at ¶ 8 (stating that "a trial court should generally provide some reason for the date that it uses, if that date is not the date of the motion"); *In re P.J.H.*, 196 Ohio App.3d 122, 2011-Ohio-5970, 962 N.E.2d 389, ¶ 12 (2d Dist.) (concluding that making

modification effective on an arbitrary date other than motion date or date with any other significance to the litigation was "without any reasonable basis" and an abuse of discretion).

{¶ 11} The court here ordered Father to pay child support of $822.42 per month retroactive to the date that Mother filed her motion. The court did not explain its choice of the start date. Father argues that the usual assumptions about circumstances should not apply here. He says that the trial court failed to consider that for the entire pendency of the motion, he had the children as much as Mother did. Father says that the testimony shows that after Mother filed her motion, the alternating-week shared-parenting arrangement continued with his son until the trial court entered its custody and support orders and with daughter at least until the GAL's interview with daughter, after which daughter refused to return.

{¶ 12} Mother filed her motion on March 30, 2017, and the trial court entered the support order on January 30, 2018. As such, Father owed a little over $8,000 for 10 months. The evidence showed that after the alternating-weeks shared-parenting schedule began, there were several months that the children did not go to Father's house at all. Mother testified that at the end of 2016, neither child went for six months. Father admitted that there was a period when the children did not come but said that it was only three or four months. The evidence also showed that for several months in the fall of 2017, the daughter did not go to Father's house. The GAL noted in his report that the exact period of time that Father did not have the children was disputed. While Mother told the GAL, consistent with her testimony at the hearing, that it was six months, Father told the GAL that it was around four to six weeks. It was the GAL's belief that the period of

time was months, not weeks, because the daughter corroborated Mother's representations, and the period of time appeared to coincide with the date that Father's girlfriend moved into his house. We note too that Mother testified that Father owed her $1,076.76 for his half of expenses related to the children that they had agreed to split.

{¶ 13} Father cites *Winn v. Wilson*, 12th Dist. Butler No. CA2017-04-052, 2018-Ohio-1010, in support of his argument. In that case too, the trial court terminated shared parenting, awarded the mother custody, and ordered the father to pay child support retroactive to the date that mother filed her motion for support. The appellate court said that, while a start date retroactive to the date of a motion's filing is usual, in that case special circumstances dictated that a different date should be used. The court noted that the trial court took over a year to decide the mother's custody and support motions and that, during that time, "Father had custody, paid for the children's expenses, and Mother had only visitation." *Id.* at ¶ 41. The court found that there was no reason to make support retroactive to the filing date of the mother's motion, because the mother had not yet become responsible for providing extra support, and making support retroactive would require the father to pay support for time that he was already providing support as the residential parent. Noting that the trial court gave no reason why it used the date that the mother filed her motion, the appellate court concluded that the circumstances in the case made it an abuse of discretion to order retroactive child support.

{¶ 14} While some of the circumstances in *Winn* are similar to those here, the differences are material. The father in *Winn* was the children's residential parent during the pendency of the support motion, but here Father had the children, at best, only half the time, and the evidence suggests that it was actually less than half. Also, we note that

Mother testified that Father owed her over $1000 for expenses related to the children. The trial court said in its support order that it was "[t]aking into account the foregoing findings [the custody-decision findings] relative to the issues of child support." Among those findings was the court's finding that Mother had essentially been the children's primary caregiver throughout. The court's findings leave the impression that Mother did much more for the children when they were in her care. The evidence of the circumstances in this case was somewhat murky. But based on the record, we believe that the trial court could reasonably have found that the circumstances were not special enough to justify beginning support on a different date. We cannot say that the court abused its discretion by ordering child support retroactive to the date that Mother filed her motion.

{¶ 15} The first assignment of error is overruled.

### B. Custody decision

{¶ 16} Father argues in the second assignment of error that the trial court abused its discretion by terminating shared parenting and naming Mother the children's residential parent and legal custodian.

{¶ 17} "The standard of review we apply to a trial court's decision concerning child custody is an abuse of discretion." *Musgrove v. Musgrove*, 2d Dist. Montgomery No. 24640, 2011-Ohio-4460, ¶ 7. A court may terminate shared parenting if it determines that shared parenting is not in the best interest of the children. R.C. 3109.04(E)(2). In determining whether shared parenting is in the children's best interest, the court must consider all relevant factors, including those enumerated in R.C. 3119.23, R.C. 3109.04(F)(1), and R.C. 3109.04(F)(2). R.C. 3109.04(F)(2).

{¶ 18} The record here shows that, in its best-interest determination, the trial court considered the relevant factors, focusing on those in R.C. 3109.04(F)(2), which are particular to shared parenting:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

The court found that the parties lacked the ability to cooperate and make joint decisions with respect to the children. Since shared parenting began, said the court, the level of cooperation between the parties had diminished, as had their ability to communicate effectively for the children's benefit. The court found that neither parent encouraged the sharing of love, affection, and contact between the children and the other parent. The court found that the evidence did not indicate anything related to abuse or kidnapping. The court further found that the geographical proximity of the parents to each other did not impede shared parenting, as they lived within a five-minute drive of each other. Lastly, the court noted that the GAL recommended in his report that shared parenting be terminated. Based on these factors, the trial court determined that shared parenting was

not in the children's best interest.

{¶ 19} After a court terminates shared parenting, the court must allocate parental rights and responsibilities, as if no shared parenting plan had ever been granted. R.C. 3109.04(E)(2)(d). The court must designate one parent as the residential parent and legal custodian of the children, "in a manner consistent with the best interest of the children." R.C. 3109.04(A)(1). To determine the children's best interest in this respect, the court must consider all relevant factors, including those enumerated in R.C. 3109.04(F)(1), which include (1) the parents' wishes; (2) the children's wishes, as expressed to the court in chambers; (3) the children's interactions and interrelationships with parents, siblings, and other persons who may significantly affect the children's best interest; (4) the children's adjustment to home, school, and community; (5) the mental and physical health of all persons involved in the situation; (6) the parent more likely to honor and facilitate visitation; (7) whether one parent has denied the other parenting time; (8) whether child-support orders have been followed; and (9) whether either parent has established or is planning to establish a residence outside of Ohio.

{¶ 20} The record here shows that the trial court considered the relevant statutory factors. The court noted that Mother sought to terminate shared parenting and be the children's residential parent and legal custodian, while Father opposed terminating shared parenting. The court interviewed each child in chambers, finding that the daughter was mature enough to adequately articulate her wishes and concerns but that the son was not sufficiently mature to do so. The court declined to state in its decision what either child expressed during the interviews.

{¶ 21} The court found that Father's home was clean and spacious and more than

adequate to meet the children's needs. The court noted that on the first day of the hearing in this case, November 30, 2017, Father was living with his girlfriend, Shonda Stewart,[2] and that she testified that day. The court found that Father's relationship with Stewart had been unstable at best. In her testimony, Stewart said that she and Father planned to marry someday. She acknowledged, though, that she had been living with Father since April 2016, except for about six weeks in late 2016, when she moved out, and except for another six weeks in mid-2017, when she again moved out. When Father testified on the second day of the hearing, January 23, 2018, he admitted that Stewart had again moved out, about three weeks before. As for Father's relationship with the children, the court found that Father had a very strained relationship with his daughter, such that he had not visited with her since roughly the summer of 2017. The court said that Father had made very little, if any, effort to repair the relationship. But with his son the court found that Father had a close and loving relationship. The court further found that, for the most part, the boy had a close and loving relationship with Father's friends and family. The court noted that alternating week-to-week shared parenting continued with the boy.

{¶ 22} As for Mother, the court found that her home too was clean and spacious and more than adequate to meet the children's needs. She lived with her boyfriend, who moved in on November 1, 2017. The court found that Mother had a very close and loving relationship with both children and that the children, for the most part, have a close and loving relationship with her friends and family. The court found that since shared parenting began, Mother had essentially been the children's primary caregiver and that she had

---

[2] The trial court decision refers to the girlfriend as "Shaunda" Stewart but the transcript and briefs refer to her as "Shonda."

cared for the children well. The court found that, despite Father's contentions to the contrary, Mother was more likely to attend to the children's educational needs; more likely to attend to the children's medical, dental, and other health care needs; and more likely to attend to the children's developmental and physical needs. The court found that Mother was better suited to take care of their day-to-day needs. The court found that if the children lived primarily with Mother, they would have a greater opportunity to have positive interactions and interrelationships with friends and relatives.

{¶ 23} The trial court found that it was not provided sufficient evidence to determine whether either party had mental- or physical-health issues that would prevent the parent from properly caring for the children. As for the children, the court found that, while they had no unresolved physical-health issues, they both had unresolved mental-health issues that required counseling. The court noted that Mother had both children in counseling. The court also noted that Father thought that counseling was unnecessary and that it was being used by the children as "an excuse not to perform." The court expressly disagreed with Father, saying that in its experience, "counselor's will not counsel with these children if they believe that there are no issues with the children or that the issues have since been resolved."

{¶ 24} The court found nothing of note about other statutory factors. Both parties, said the court, are likely to honor and facilitate visitation. No current child support had been ordered, so there was no arrearage. The court found that neither parent had continuously or willfully denied the other parenting time. And neither parent had established, or indicated a plan to establish, a residence outside Ohio.

{¶ 25} The trial court also considered the GAL's recommendations made in his

written report and testimony. The GAL recommended that Mother be designated the children's residential parent. The GAL also recommended that Father and his daughter strongly consider counseling to improve their communication and relationship.

{¶ 26} Lastly, we note that the trial court made express credibility determinations. The court said that, for the most part, Mother's testimony was credible. As for Father, the court said that, at times, his testimony was not credible.

{¶ 27} Father argues that the evidence was insufficient to support many of the trial court's findings, that the court's best-interest determinations were conclusory, and that the court failed to state any specific facts to support its conclusions. Father disputes the court's finding that he and Mother lack the ability to communicate and make decisions regarding the children. With respect to their son, says Father, there was no evidence that they had such problems. Similarly, he says that there was no evidence of any conflict between them related to their daughter, except for the disagreement about counseling. Father also disputes the finding that he made very little, if any, effort to repair his relationship with his daughter. He points out that he testified that he had texted an apology to her. Father further says that there was no evidence that either he or Mother lacked the ability to encourage the sharing of love, affection, and contact between the children and the other parent. There was also no evidence, Father says, to support the finding that the children have a greater opportunity for positive relationships and interactions with friends and relatives in Mother's custody. Father also disputes the finding that Mother served as the children's primary caregiver. He says that the children spent the same amount of time with him as they did with Mother. Finally, Father says that the trial court should not have relied on the GAL's report, because the GAL did a particularly poor job.

**{¶ 28}** We have considered each point that Father raises. But we are mindful that "[t]he discretion which a trial court enjoys in custody matters should be afforded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." *Beismann v. Beismann*, 2d Dist. Montgomery No. 22323, 2008-Ohio-984, ¶ 20, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). The record here sufficiently supports the trial courts determinations. We cannot conclude that the court abused its discretion in determining that the children's best interest supported terminating shared parenting and designating Mother as the primary residential parent.

**{¶ 29}** The second assignment of error is overruled.

### III. Conclusion

**{¶ 30}** We have overruled both of the assignments of error presented. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

WELBAUM, P. J. and FROELICH, J., concur.

Copies mailed to:

Robert K. Hendrix
James E. Heath
Michael Edwards, GAL
Hon. Thomas J. Capper