[Cite as *Tellis v. Tellis*, 2021-Ohio-1976.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STACY A. TELLIS | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29020 |
| | : | |
| v. | : | Trial Court Case No. 2018-DR-1083 |
| | : | |
| QUINCY L. TELLIS | : | (Domestic Relations Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of June, 2021.

. . . . . . . . . . .

MATTHEW C. SORG, Atty. Reg. No. 0062971, 2700 Stratacache Tower, Dayton, Ohio
45423
     Attorney for Plaintiff-Appellee

STEVEN M. ABSHIRE, Atty. Reg. No. 0072296 & KERI E. FARLEY, Atty. Reg. No.
0076881, 2689 Commons Boulevard, Suite 100, Beavercreek, Ohio 45431
     Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Quincy L. Tellis ("Father") appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which implemented a shared parenting order and ordered him to pay child support to plaintiff-appellee Stacy A. Tellis ("Mother"). Father filed a timely notice of appeal on January 25, 2021.

{¶ 2} Mother and Father were married in Tipp City, Ohio, in September 2012. During the course of the marriage, the parties had two children, who were born in 2013 and 2015.

{¶ 3} On December 4, 2018, Mother filed a complaint for divorce, alleging gross neglect of duty, extreme cruelty, and incompatibility. On the same date, the trial court granted Mother a temporary restraining order against Father. On January 4, 2019, Father filed an answer and counterclaim for divorce, and the trial court also granted Father a temporary restraining order against Mother. On January 22, 2019, Mother filed a reply to Father's counterclaim for divorce.

{¶ 4} On January 24, 2019, Mother filed a motion for exclusive use of the parties' marital residence. On February 14, 2019, the parties entered an agreed order, which provided that Mother would have exclusive use of the home and temporary custody of the children once Father moved out of the marital residence, and Father would have parenting time pursuant to the standard order. Father was also ordered to pay child support in the amount of $258 per month per child.

{¶ 5} On May 13, 2019, Father filed a motion for a hearing on the temporary orders pursuant to Civ.R. 75(N); a hearing was held on June 18, 2019. The trial court then filed an agreed order which stated that Father would have parenting time with the children on

"Wednesdays and Thursdays overnight" and Mother would have parenting time on "Mondays and Tuesdays overnight." Agreed Order (June 19, 2019), p. 1. The order further stated that the parties would alternate weekends "from Friday from daycare/school return to daycare/school on Monday." *Id.* Finally, Father's temporary child support obligation was suspended, and the parties were ordered to equally share the children's expenses.

{¶ 6} On August 1, 2019, Mother filed a motion to show cause against Father; she alleged that he had failed to make payments pursuant to the June 1 agreed order. Mother also requested child support be awarded to her based on the child support guidelines due to Father's alleged inability to provide financial support to the minor children through the sharing of expenses. The trial court appointed a guardian ad litem (GAL), and hearings were held on Mother's motion to show cause on February 5 and 26, 2020. On March 4, 2020, the magistrate found that Father was in contempt for failing to pay his share of the children's daycare expenses, but that Father had otherwise complied with the agreed order. Father was sentenced to two days in jail, suspended on the condition that he pay the children's expenses in a timely manner in the future. On April 13, 2020, the trial court adopted the magistrate's decision in its entirety.

{¶ 7} A trial was held in this matter on June 9, 2020. After hearing testimony from Mother and Father and viewing the exhibits, including the GAL report, the trial court found that it was in the best interest of the children for the parties to have a shared parenting plan, rather than equal parenting time; it also named Mother as the residential parent for purposes of the children's daycare/school. Father was awarded parenting time with the children every week after school on Wednesdays through Friday until 6:00 p.m., and

every other Saturday from 2:00 p.m. until Sunday at 7:00 p.m. Regarding child support, the trial court ordered Father to pay a monthly total sum of $641.88 to Mother for the care and support of the two children; this amount represented a 15% downward deviation from the standard child support order. A Final Judgment and Decree of Divorce and a Final Judgment and Decree of Shared Parenting were filed on December 28, 2020.

{¶ 8} Father now appeals.

{¶ 9} Father's first assignment of error is as follows:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN THE ALLOCATION OF PARENTING TIME TO APPELLANT.

{¶ 10} Father contends that the trial court erred when it found that the parties should have a shared parenting plan and awarded him parenting time with the children every week after school on Wednesdays through Friday until 6:00 p.m., and every other Saturday from 2:00 p.m. until Sunday at 7:00 p.m. Specifically, Father argues that, based upon the totality of the circumstances, it was in the best interest of the children for the parties to have equal parenting time. At the trial in this matter, both parties had requested sole custody of the children but, in the alternative, both parties had agreed that a shared parenting agreement would be appropriate.

{¶ 11} The discretion which a trial court enjoys in custody matters should be afforded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. *Beismann v. Beismann*, 2d Dist. Montgomery No. 22323, 2008-Ohio-984, ¶ 20. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. *Miller v. Miller*, 37 Ohio St.3d 71, 74,

523 N.E.2d 846 (1988).

{¶ 12} "The issue of parenting time is a matter entrusted to the discretion of the trial court. Thus, absent an abuse of that discretion, we will not reverse a trial court's decision on parenting time. The term 'abuse of discretion' implies that the trial court's decision is unreasonable, arbitrary or unconscionable." *Szeliga v. Szeliga*, 2d Dist. Greene No. 2011-CA-65, 2012-Ohio-1973, ¶ 12. We find no abuse of discretion here.

{¶ 13} When deciding the best interest of a child, courts consider all relevant factors and are guided by the specific factors listed in R.C. 3109.04(F)(1), which states:

(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 14} The record in this case shows that the trial court considered these relevant factors in its best-interest determination and also considered the factors in R.C. 3109.04(F)(2), which are particular to shared parenting:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

See Dickerson v. Dickerson, 2d Dist. Clark No. 2018-CA-21, 2018-Ohio-3502, ¶ 18.

{¶ 15} The GAL found that both parties agreed that communication between the two of them was "difficult" and that "their conversations typically result in the two of them arguing." GAL Report, p. 14. The GAL stated that he was concerned about Father's alleged use of excessive corporal punishment with the children, but he also noted that

Children's Services had been unable to substantiate any of Mother's claims in that regard.

{¶ 16} The GAL also stated that he found Mother to be the primarily parent who was more involved in day-to-day activities and routine with the children. The GAL noted that Father's work schedule required the children to wake up at 4:00 a.m. on Wednesdays and Thursdays in order to get to their great aunt's house prior to daycare/school. Father also admitted to the GAL that he frequently took overtime shifts on his standard days off (Wednesdays and Thursdays), requiring the children to be placed with Father's relatives while he was at work. Based upon his findings, the GAL recommended that Mother be the sole custodian of the parties' children and that Father receive a Standard Order of Parenting Time, with the addition that Father's Wednesday visitation with the children be an overnight stay. Significantly, the GAL specifically recommended against the parties' entering into a shared parenting plan.

{¶ 17} "A trial court is not bound to follow a guardian ad litem's recommendation." (Citation omitted.) *Lumley v. Lumley*, 10th Dist. Franklin No. 09AP-556, 2009-Ohio-6992, ¶ 46. "As the fact finder, the trial court determines the guardian ad litem's credibility and the weight to be given to the guardian ad litem's recommendation. Because assessment of the credibility and weight of the evidence is reserved for the trial court, we will not second guess the court's decision to disregard the guardian ad litem's recommendation." (Citation omitted.) *Id.*, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶ 18} As previously stated, both parties were amenable to the implementation of a shared parenting plan. After hearing all of the testimony from the parties and viewing the exhibits, including the GAL Report, the trial court found that it was in the best interest

of the children that the parties enter into a shared parenting plan. The trial court found that both children were bonded to and loved both parents. Both parties provided stable and appropriate housing, and the children had good relationships with the parties' respective families, who were called upon to watch them occasionally.

{¶ 19} The trial court also found that Father's work schedule at the time of the trial consisted of his working from 5:00 a.m. to 1:00 p.m., Saturday through Wednesday; he generally had Thursdays and Fridays off when he was not working overtime, some of which the trial court found was mandatory for Father. The trial court found that, with Father having Thursdays and Fridays off, the children would no longer have to get up early to go to their great aunt's house so Father could get to work on time. Additionally, the trial court found that Father could put the children to bed at their regular bedtimes and take them to school in the mornings on Thursdays and Fridays. Accordingly, the trial court implemented a shared parenting plan and awarded Father parenting time with the children every week after school on Wednesdays through Friday until 6:00 p.m., and every other Saturday from 2:00 p.m. until Sunday at 7:00 p.m. While not providing necessarily "equal" time with the children to Mother, Father would be able to maximize his time with them, considering his new work schedule, under the trial court's order. Furthermore, the trial court was not bound by the recommendation of the GAL regarding the shared parenting plan. In light of the foregoing, we cannot say that the trial court abused its discretion when it found a shared parenting plan to be in the children's best interest.

{¶ 20} Father's first assignment of error is overruled.

{¶ 21} Father's second assignment of error states:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN THE CALCULATION OF CHILD SUPPORT.

**{¶ 22}** Father argues that the trial court abused its discretion when it ordered him to pay a monthly total sum of $641.88 to Mother for the support of the two children. As previously stated, the amount of child support that Father was ordered to pay reflected a 15% downward deviation from the standard child support order.

**{¶ 23}** We review child support decisions for abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

**{¶ 24}** "The party seeking to rebut the basic child support schedule has the burden of presenting evidence which demonstrates that the calculated award is unjust or inappropriate and would not be in the best interest of the child." *Murray v. Murray*, 128 Ohio App.3d 662, 671, 716 N.E.2d 288 (12th Dist.1999); *see also MacMurray v. Mayo*, 10th Dist. Franklin No. 07AP-38, 2007-Ohio-6998, ¶ 30. "As with most matters pertaining to child support, the decision to deviate from the actual annual obligation is discretionary and will not be reversed absent an abuse of discretion." *Hattenbach v. Watson*, 2d Dist. Montgomery No. 27071, 2016-Ohio-5648, ¶ 14, citing *Havens v. Havens*, 10th Dist. Franklin No. 11AP-708, 2012-Ohio-2867, ¶ 6; *see In re Custody of Harris*, 168 Ohio App.3d 1, 2006-Ohio-3649, 857 N.E.2d 1235, ¶ 60-61 (2d Dist.).

**{¶ 25}** R.C. 3119.24 permits a trial court to deviate from the guideline calculation if that amount "would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of extraordinary circumstances of the parents or because of any other factors or criteria as set forth in R.C. 3119.23 of the Revised Code." The fact that parents equally share in parenting time does not, by itself,

justify a deviation in the amount of child support. *Glassner v. Glassner*, 160 Ohio App.3d 648, 2005-Ohio-1936, 828 N.E.2d 642, ¶ 48 (5th Dist.). Instead, it is just one factor to be considered by the trial court. The "extraordinary circumstances listed in R.C. 3119.24(B) include (1) the amount of time the children spend with each parent, (2) the ability of each parent to maintain adequate housing for the children, (3) each parent's expenses, and (4) any other circumstances the court considers relevant." *Hattenbach* at ¶ 13. R.C. 3119.23 adds an additional 16 factors a trial court may consider in determining whether to deviate from the guideline, including income disparity between the parties.

{¶ 26} In this case, the trial court found that the stipulated annual salaries of the parties were: Father, $51,896.26, and Mother, $51,508.38. At trial, Father requested that the parties continue sharing the costs of any child-related expenses. Conversely, Mother requested a child support order in the monthly amount of $749.02 for the children, which the trial court noted "is guidelines child support." Decision (Nov. 24, 2020), p. 11. In its decision awarding Mother child support for the minor children, the trial court stated:

> These parties tried the cost-sharing method during the pendency of this case and *the arrangement was problematic*. [Father] was consistently late with payments. He has been able to catch up with most payments lately and requests the opportunity to continue in this manner.
>
> The Court finds a specific order of child support payable monthly from [Father] to [Mother] *can alleviate conflict in this area*. Due to the time each parent will spend with the children the Court will grant [Father] a 15% deviation downward from the standard child support order. *The Court finds*

*this deviation to be in the minor children's best interest.*

(Emphasis added.) *Id.*

{¶ 27} Upon review, we can find no abuse of discretion in the trial court's decision to order Father to pay child support to Mother.   As stated by the trial court, Father had a history of late payments to Mother when they were sharing the minor children's expenses during the pendency of the parties' divorce.   By ordering Father to pay monthly child support to Mother, any issues regarding late or non-existent payments would presumably cease.   Additionally, we conclude that the trial court did not err when it awarded Father a 15% downward deviation in his support obligation for the parties' children; the trial court's findings and the record sufficiently supported this deviation.

{¶ 28} Father's second assignment of error is overruled.

{¶ 29} Each of Father's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, J. and EPLEY, J., concur.

Copies sent to:

Matthew C. Sorg
Steven M. Abshire
Keri E. Farley
Hon. Denise L. Cross